NUNC PRO TUNC

MAY 30 2008

Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142
415) 336-3547

Plaintiff



FILED
JUN 02 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JANE ROCIO EVANS

CASE NO. 08CV0315 - DMS (LSP)

**EXHIBITS 1- 12**

vs.

Plaintiff,

LOGAN HEIGHTS FAMILY COUNSELING CENTER,

Defendant

**EXHIBITS 1 (a), (b) copy** of a Notce-of-Right-toSue-Letter from Equal Employment Opportunity Commission, San Diego, signed on November 23, 2007 by EEOC Intake Worker, Raul Green. Charge of Discrimination, Charge No. 488-2007-007 49, signed by Plaintiff on October 10, 2007. 3 pages.

**EXHIBIT 2** Letter written by Anke Gleber, Ph.D., MFT, Licensed Marriage and Family Therapist #38404. Letter written on January 25, 2007. Whistle blowing letter by Ms. Gleber stating that she is a witness to Defendant Supervisor Eleanor Kreyling intentionally forging signatures of monolingual Spanish Speaking parents. Forms were Medi-Cal forms of Parental Consent for children to participate in therapy. Letter also states that Norma Lopez, former employee at Defendant's company, was Terminated for whistle blowing or communicating to these parents that these forms had been forged by Ms. Kreyling. Ms. Lopez is thus a discrimination set to case. 4 pages.

**EXHIBIT 3** Letter of Reference by Anke Gleber, written June 15, 2007, stating that Plaintiff had positive working relations with co-workers at Defendant's company. 2 pages.

**EXHIBIT 4** Document from Social Security Administration in San Francisco, showing that Plaintiff had $0 earnings in 2003, earned $16,568.54 in 2005 and $25,612.97 in 2006. Letter thus shows that financial harm was caused by Lockout of Plaintiff by Defendant in October 2002. 1 page.

**EXHIBIT 5** Letter sent via Certified mail on August 17, 2007 to Joyce Cooper, Director, Equal Employment Opportunity Commisssion, San Diego. 4 pages

**EXHIBIT 6** Letter sent by fax to Raul Green, EEOC Intake Worker on December 19, 2007. 1 page

**EXHIBIT 7** Letter sent via Certified mail, return recipt requested to Jyce Cooper, San Diego EEOC Director on December 22, 2007. 3 pages

**EXHIBIT 8** Letter sent via Certified mal to Olophius E. Perry at EEOC, Los Angeles on December 28, 2007. 2 pages

**EXHIBIT 9** E-mail sent to EEOC Supervisor Michelle Nardella, San Francisco, on Decemeber 27, 2007. 1 page

**EXHIBIT 10** Certified mail recipt confirmations sent to Olophius perry, Joyce Cooper. 1 page

**EXHIBIT 11** Track and Confirm Search results from the United States Postal Website. 2 pages

**EXHIBIT 12 Board of Behavioral Sciences License Confirmation for Jane Rocio Evans. 2 pages**

DATED May 25, 2008

Jane Rocio Evans, MFT

Jane Rocio Evans, MFT

EEOC Form 161 (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: Jane R. Evans
P. O. Box 424886
San Francisco, CA 94142

From: San Diego Local Office
401 B Street
Suite 510
San Diego, CA 92101

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2007-00749 | Roger A. Owen, Investigator | (619) 557-7283 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.
- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.
- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.
- [X] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge
- [ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.
- [ ] While reasonable efforts were made to locate you, we were not able to do so.
- [ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.
- [ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
- [ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.
- [ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Raul Green

Raul G. Green,
Intake Supervisor

11/23/2007
*(Date Mailed)*

Enclosures(s)

cc: LOGAN HEIGHTS FAMILY HEALTH CENTER
1809 National Avenue
San Diego, CA 92113

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

[ ] FEPA

[X] EEOC 488-2007-00749

and EEOC

State or local Agency, if any

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Jane Rocio Evans | (415) 336-3547 | 05-26-1962 |

Street Address City, State and ZIP Code

P. O. Box 424886, San Francisco, CA 94142

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| LOGAN HEIGHTS FAMILY HEALTH CENTER | 201 - 500 | (619) 234-8171 |

Street Address City, State and ZIP Code

1809 National Avenue, San Diego, CA 92113

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE [ ] COLOR [ ] SEX [ ] RELIGION [X] NATIONAL ORIGIN

[X] RETALIATION [ ] AGE [ ] DISABILITY [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 09/01/2001 | 10-11-2002 |

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I began working for the Logan Heights Family Health Center on or about May 27, 2000 as an MFT Intern/Therapist.

On or about October 11, 2002, I was escorted off the premises and "locked out" of my job by my supervisors, Diane Coming and Yvonne Bentle. The 'lock-out' was Retaliation from Ms. Coming and Ms. Bentle for calling California Association of Marriage, Family Therapists. I believe this was due to retaliation because of me participating in someone else's complaint in June 2000 by signing a petition with co-worker, Luis Morales, for the unfair treatment of Mexican co-worker, Adela; for her being unjustly laid off work for illegal reasons and also Adelia's racially discriminatory treatment by Supervisors.

Additional Retaliation occurred in Winter 2003 by these Supervisors for an investigation of me by San Diego Mental Health personnel. These personnel investigated me for Fraud and communicated to me that my "charts from this company were going to be thoroughly audited." This occurred a few months after I complained in writing about illegal and unethical conduct of these Supervisors.

Retaliation in the form of HR Director, who is White, Black listed and defamed me and racially harassed me by giving me a negative reference to the Dir. of the San Ysidro Mental Health Center. This occurred around March 2003. Of course, I did not get the job.

Retaliation by Diane Coming is in the form of a card she sent by mail refusing to give me a professional reference, her business being "because you have been hostile to co-workers."

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

x 10-10-07 Jane Rocio Evans MFT

Date Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: ☐ FEPA ☒ EEOC

Agency(ies) Charge No(s): 488-2007-00749

and EEOC

State or local Agency, if any

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Further Retaliation from Ms. Bentle by a letter she gave me around June 2002 in which she told me " I had the option of going to another program besides hers if I wanted to."

Additional Retaliation came from Supervisors Coming, Bentle and Nora, in the form of a Meeting where I was harassed by these 3 supervisor, who all met at once with me to investigate me, about a month before I was Locked out in October 2002.

Norma Lopez is a set to this discrimination. She is Latina and she was terminated for whistle blowing on Supervisor Eleanor Kreyling, who is White. Ms. Lopez whistleblowed that Ms. Kreyling was illegally forging the signatures of Latino immigrant monolingual Spanish speaking parents on Medi-Cal forms, specifically Consent for minor children to enter therapy treatment forms. Ms. Kreyling was thus committing medi-cal Fraud and that there is another witness to this besides Ms. Lopez.

Luis Morales, Latino, was racially harassed by program Coordinator Nora and Supervisor Diane Coming, who are both Caucasian, by being pushed and coerced into adding several school sites to his work caseload, illegally, as this was not the agreement he had entered into when he was first hired by Logan Counseling Center. He was driven to tears by this and felt he was thus forced to resign from Logan Counseling Center. There are witnesses to this.

Adela was unnecessarily escorted off the premises by Security on her last day of work and this was distressing to her co-workers, as she is a Manager. Supervisor Diane Coming authorized her being escorted by Security.

A Security Officer unnecessarily escorted me off the premises, after Luis Morales had complained in writing about this civil rights violation of Latina co-worker Adela being escorted by Security, to Supervisors Diane Coming and Nora.

Anka Gleber was discriminated against by Supervisor Kreyling threatening and intimidating her with termination. Ms. Gleber was also unnecessarily audited by Supervisor Nora, who audited her charts/files, searching for medi-cal fraud, in order to find evidence to terminate her. Ms. Gleber was unnecessarily audited, as well as me, by Supervisor Nora, who is White.

Ms Kreyling defamed and slandered my professional reputation to Latina Supervisor Evelina Jaimez by telling her that "Ms. Evans is a Troublemaker."

Ms. Coming, Ms. Bentle and Nora violated Logan's disciplinary policy by authorizing my termination and lockout from Logan when I did not have even a verbal warning on my employment performance record. Ms. Bentle did not investigate, using the proper legal channels and process as regards to the investigation of a civil rights violation, that co-worker Ann Leffington, who is White, intentionally slandered my professional reputation by stating that I had hindered her from completing a Play Therapy Presentation. A meeting did not take place with Ms. Bentle regarding this. Ms. Leffington refused a meeting with me to resolve this slander. I initiated this meeting, for purposes of conflict resolution and better working relations with Ms. Leffington. There are witnesses to this.

2. I believe that I have been discriminated against because of my national origin (Mexican) and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

X 10-10-07 X [signature] MFT

Date — Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

**RAVENSWOOD CITY SCHOOL DISTRICT**
Mailing Address: 2120 Euclid Avenue, East Palo Alto, CA 94303
Phone #: (650) 329-2800 – Fax #: (650) 323-1072
**Substitute Line - Phone #: (650) 323-9418**

Anka Gleber, Ph.D., MFT
Licensed Marriage and Family Therapist # 38404
PPS Credential/School Psychologist, Palo Alto, CA

**REJECTED**

25 January 2007

To Whom It May Concern:

In this letter, I will describe datelines and events during my employment and MFT internship at Family Health Centers of San Diego (FHC), where I worked at the Spring Valley branch of that organization from 2001-2002. I am writing this letter at the request of Ms. Rocio Evans, M.A., MFT, whom I have known in her professional capacity as a bilingual therapist, with a specific qualification in Sandtray Therapy, since the summer of 2001. I was introduced to Ms. Evans in Aug. 2001 at a "Spirit of the Barrio Luncheon" meeting that was organized by FHC for all their new and regular employees and staff. At that time, I had just been hired by the Spring Valley branch of FHC, and Ms. Evans had already been working for FHC as a registered MFT intern and counseling employee at the Logan headquarters of the organization, providing child, adolescent, and family therapy at a range of public elementary schools within a school-based, bilingual Spanish-speaking counseling program in the Barrio Logan and downtown areas of San Diego.

After several months of working in the Spring Valley branch of my internship, I began to realize that my supervisor on that site, Ms. Eleanor Kreyling, might not be in the position to provide the most adequate kind of professional expertise and supervision, in order for her interns to expand their counseling skills and grow within their professional development. For example, I had noticed that supervision hours at FHC were not being regularly scheduled and attended to, unless the intern herself pursued the supervisor in an almost adamant manner, in order to remind her to provide the requisite supervision time. In addition, the regular Monday morning team meeting and group supervision would tend to get started late and conducted in a decidedly disorganized fashion which did not seem to be much geared toward expanding the intern participants' knowledge and expertise in providing counseling and psychotherapy.

In particular, I would become increasingly concerned by certain pronouncements made by Ms. Kreyling that would strike me as professionally ill-advised and at times bordering on misinformation and malpractice (such as a statement that "everyone" in the general population would be considered to have some manifestation of a DSM-IV Axis I diagnosis, such as anxiety or depression, according to the supervisor.) Such statements in particular seemed—and still seems—to be highly problematic to me, in fact indicating a personal opinion only that can overall only be characterized as grossly incompetent, suggesting a misunderstanding as well as an overall violation of clinical DSM-IV criteria and indicating a potential lack of supervisory qualifications on the part of the person who was had been put in charge of supervising interns at the Spring Valley branch of FHC.

Complaint → Evidence of Ms. Gleber whistleblowing for public Good – that of clinical support of interns & greater clinical support for clients and subsequent (over)

It was becoming increasingly apparent that I was not able to obtain satisfactory answers to the professional questions I posed during supervision hours, as I often tried to clarify issues by posing follow-up questions and asking for further clarification. As her response, Ms. Kreyling would often resort to just lifting an eyebrow or rolling her eyes, indicating apparent displeasure with being put in the position of having to elaborate on some of the finer professional points of diagnosis or treatment. On one such occasion, when the supervisor again engaged in her mimic expressions of a "here you go again," being in a lighter mood, I teasingly suggested that "Eleanor, why don't you just fire me." At that instance, Ms. Kreyling instantly seemed to turn decidedly serious and responded to me, in an entirely business-like and non-joking manner, "You know, Anka, it is not so easy to fire someone." The markedly different tone of her answer, as well as the instant response seemed to suggest to me that she indeed might already have entertained notions of getting rid of a professionally engaged intern, whose inquisitiveness she found to have tested the limits of her professional abilities.

With regard to other, and equally unprofessional-type comments that I recall Ms. Kreyling to have made during that time, was also one relayed to me by Ms. Rocio Evans, another MFT intern. Rocio had at that time become familiar to me as a fellow qualified professional in the field, and as one of the professionally more promising and compelling interns who were a part of our group of pre-licensed marriage and family interns at FHC. After one of the group meetings we had shared with the intern group at the Barrio Logan location, Rocio Evans told me that Ms. Kreyling, who was not her immediate supervisor and barely knew her from very infrequent contacts, had dismissed one of her statements, claiming that she was "just a trouble maker." Ms. Evans also related a similar comment by another FHC supervisor, Ms. Coming, alleging that Rocio was "not getting along" with her fellow interns. I have to admit that I was instantly surprised and negatively taken aback by such misguided as well as unprofessional statements about a friend and fellow professional, Ms. Evans, whom I had only ever known as an intelligent, well-informed, dedicated, fully bilingual therapist with great care of her clients and intensive knowledge of the population that Family Health Centers of San Diego primarily seeks to serve.

Like everyone else at this organization, I was very aware that Rocio Evans had nothing but good and cordial relations with all staff and employees, and especially with those among her peer group, having been invited to their homes and sharing social events such as birthday parties and happy hours with them, as well as being sought out by them as both a spiritual advisor and confidante, overall representing a cherished and respected voice in personal and professional matters among an intern group that was characterized by the supportive, cordial, and helpful atmosphere of a good peer group. Rocio Evans's work and stature at Family Health Centers of San Diego had been further distinguished through generous grants from that organization, allowing her to finance a grant to provide sandtray materials, as well as support her special training in Sandtray Therapy, even send her to a specialized conference in Portland, OR, which all constituted a highly unusual acknowledgment of professional and personal merit, especially for a pre-licensed intern therapist. Ms. Evans finally had been nothing but an excellent and helpful colleague to me, always eager to share resources and suggestions with others. Furthermore, I had never heard any of our fellow interns, nor the ones at Barrio Logan, make any negative

comments about Ms. Evans, who was a well-liked intern of long-term good standing at that location. Therefore, the comments made by Ms. Kreyling and her colleague seemed to me to be particularly ill-advised, and not professionally valid opinion, presenting a gratuituously negative and biased remark.

The combined impact of those experiences seemed to indicate to me that the Spring Valley branch, indeed, had become a somewhat hostile work environment, with limited professional resources of adequate quality. Therefore, it was at this point in time that I arranged for a meeting with the HR department of Family Health Centers, in order to ask for a transfer to another location of that organization, in order to hopefully obtain a person better qualified at providing clinical supervision. However, to my distress, I found that my request for an internship transfer was turned down by the HR department, though I had been made aware by other employees that there were counseling openings in other branches of FHC which I qualified for, particularly being functionally bilingual and able to provide psychotherapy to clients and families in Spanish, a decidedly great need and responsibility in most of the locations served by FHC. However, instead of considering and acknowledging the factual and professional rationales of my transfer request, the HR department suggested that I needed become more tolerant of this particular supervisor's specific "personality," stating that it was only a personality conflict presumed to be the main source of my professional discontent with the supervisor in Spring Valley, rather than professional and ethical concerns rooted in my expectations of quality control for clinical supervision time.

By December 2001, I learned that I had passed all of my qualifying written and oral examinations for the MFT licensing exam. I have to admit that it was to my specific great relief that I therefore no longer needed to attend those "supervising" hours with the particular FHC supervisor, which I had found to be distressing and lacking in the quality and care one would expect for such supervisory times. As a fully licensed MFT, I would overall have to describe the "supervision" received at the Spring Valley branch of Family Health Centers of San Diego to be characterized as lacking in the appropriate guidance and mentorship of interns. I was therefore professionally relieved to no longer have to participate in those meeting. However, to my distress and ongoing professional concern, the ethical issues I encountered at FHC-Spring Valley would not cease to be a problem at that counseling center.

During the spring of 2002, I was engaged in a series of regular Treatment Plan updates for several of my school-age counseling clients. I therefore took copies of their treatment goals and objectives to their guardians' and parents' homes, in order to obtain their signatures on these documents. However, when I took those legally signed plans back to the clinic to file them with the clients' documents on hand, I realized that those legally-obtained parent signatures differed significantly from the signatures (showing the same parent names, but being executed in decidedly different hand-writing), evident on the previous service and treatment plans I found there. (This concerns the cases of two young brothers from a monolingual Spanish-speaking home in Spring Valley, Alejandro "Alex" and Adrian A., as well as another student from Spring Valley Elementary School; full names available upon request).

I was greatly distressed by these findings, since it appeared we were dealing here with at least two different sets of signatures, which potentially might make the signatures which I had obtained directly from the parents, look problematic as well unless I directly addressed the matter myself. When I shared my concerns with the department's young receptionist/ secretary at the time, Norma Lopez, she confirmed what I was seeing and told me that she had known of similar evidence, since this appeared to be Ms. Kreyling's handwriting, who had signed treatment plans by herself, apparently without consulting with the clients' parents and guardians directly. Needless to say, this constitutes eminent violation of client rights, which seems all the more egregious since these guardians were monolingual speakers of Spanish, who had little recourse to accessing their client rights.

Both Ms. Lopez and myself were somewhat unsure about how to proceed in this manner, since it would likely have to involve stating that our immediate supervisor and boss had engaged in unethical, possibly illegal acts, and both of us perceived ourselves to be in a vulnerable position as possible targets of her retaliation. However, as I found out later that Ms. Lopez, who herself is bilingual Spanish-speaking, had later contacted the monolingual Spanish-speaking parents/guardians of the young clients involved, in order to inform them of the matter and provide them with information about their rights, which potentially had been violated. It was a few weeks after these events (approx. April 2002) that I heard that Ms. Lopez had been suddenly, to the surprise of most of the staff at the Spring Valley branch, terminated from her position as well as being locked out from her computer access and clearing her desk.

It was shortly after that I myself received an offer of employment as a licensed mental health clinician from San Diego City Schools, which I believed I had to accept. I gave the required two weeks notice to the organization in 6/2002, however, was not able to reach all of my therapy clients during that time span in order to conduct appropriate therapeutic closing sessions and better facilitate their continued psycho-social welfare. I therefore asked to have a few days added to my employment with Family Health Centers, in order to ensure appropriate closure; yet, I was told by Nora Cole that was not an option, thereby creating yet another incident that I believe to be ethically questionable and therapeutically problematic.

It was therefore to my great regret that I felt I needed to leave Family Health Centers of SD, an organization whose general mission statements are of great merit and service to the community. I also am certain that I would have chosen to continue my employment with FHC, if I had felt the work environment would have been managed in a more professionally appropriate manner. However, I did not feel the overall working conditions at the organization at the time were conducive to creating a climate in keeping with the organization's mission, nor specifically, that the supervisors had been able to establish an adequate and fair environment for all of their interns and staff.

Sincerely, yours,

Dr. Anka Gleber
School Psychologist, RCSD

RAVENSWOOD CITY SCHOOL DISTRICT
Mailing Address: 2120 Euclid Avenue, East Palo Alto, CA 94303
Phone #: (650) 329-2800 – Fax #: (650) 323-1072
Substitute Line - Phone #: (650) 323-9418

15 June 2007

To Whom It May Concern:

I am writing this letter in order to provide a reference for Ms. Rocio Evans, M.A., MFT, who is currently seeking employment as a licensed Marriage and Family Therapist with your organization. I have known Ms. Evans for about seven years now, having first worked with her as a bilingual and group therapist from early 2000 until the end of 2002. During the time I was employed as a licensed MFT at the Spring Valley branch of Family Health Centers of San Diego (FHC), and was introduced to Ms. Evans, an MFT intern at that time, in the context of group supervision and regularly scheduled staff meetings in the organization. I have actively cooperated with Rocio in the preparation of her licensing exams during that time, as well as during clinical consultations for specific cases that she was assigned to during those years.

In this context, I have been able to form a thoroughly positive impression about the qualities of Ms. Evans' clinical skills as both a group and individual therapist. I have further been able to witness her many apparent personal as well as interpersonal skills, during multiple staff and supervision meetings and case consultations, where she often served as a team leader and resource therapist with specific areas of expertise beyond the scope of other therapists of similar training. These included Rocio's ability to provide therapy and groups in Spanish to our many bilingual clients, as well as conduct both trainings and therapy sessions also involving Sandtray therapy, which she diligently pursued as one of her therapeutic specializations through additional coursework and supervision.

Through her clinical skills and respectful manner, as well as her friendliness and manifest personal skills, Ms. Evans finds it easy to relate to and build rapport with both her coworkers and the clients whom she serves as a licensed bilingual therapist. During her time at FHC, I have known Rocio to always being active and highly productive, in regard to both the quantity of her caseload in individual and group therapy, as well as in the high quality and ethical, effective delivery of therapeutic services and interventions. Ms. Evans has consistently been known to being able to provide the most appropriate services for her clients and groups, and serve both our English-only and bilingual clients at FHC in a professional manner throughout her tenure at that organization.

I was always aware that Rocio Evans performed as an effective team player at FHC, maintaining appropriate friendships and cordial relations with her fellow interns, staff, and employees. Among her peers, she was frequently sought out as a respected voice in personal and professional matters, providing a focal point for an intern group that was generally characterized by a supportive and helpful atmosphere. Ms. Evans's work and good standing at Family Health Centers of San Diego was distinguished further through a generous grant she received from the organization, allowing her to provide therapeutic materials and support for her training in Sandtray Therapy, including a specialized conference in Portland, OR, which overall constituted a highly unusual

acknowledgment of professional and personal merits, especially for the pre-licensed intern therapist she was at the time.

Throughout the years that I have known Ms. Evans, she has been an exemplary and most helpful colleague to me, always eager to share her resources and expertise with others. She was a well-liked intern at the Logan Heights branch of FHC in San Diego of long-term good standing. I have known Ms. Evans to consistently provide therapy and consultations at the very high levels of her clinical and personal skills. In addition to her specialization in Sandtray and Play Therapy with children and school-age clients, she has demonstrated further strengths in working with diverse client populations, groups and individuals impacted by domestic violence, abuse, and other manifestations of traumatic exposure leading to depression, anxiety, and adjustment disorders. Most recently, Ms. Evans has successfully worked in the field of substance abuse treatment, by providing both group and individual therapy at a non-profit organization in San Francisco specializing in these areas.

In my opinion and that of the many other professionals that I have worked with at FHC, Ms. Evans has always done an outstanding job responding to the high levels of need of those seeking her expertise as a therapist, while also managing a demanding work assignment. Going above and beyond the call of her tasks, Rocio appeared to never mind being of assistance to our clients and professional colleagues. She does seem to genuinely enjoy working with others, so that her assistance has been appreciated by everyone who had professional contact with her as a therapist and counselor. Through her patience and tact as well as her multiple linguistic and intercultural skills, Ms. Evans relates and works well with others, including individuals from a wide range of backgrounds.

I am therefore very confident that Ms. Evans would be able to make a strong and constructive contribution to your or any other organization that seeks a dedicated and exceptional therapist to fulfill those functions. I recommend Ms. Evans to you most highly and without any reservations whatsoever, as a Marriage and Family Therapist of exceptional skills and qualifications, whom I have known to demonstrate a consistently high level of clinical skills and commitment to her work with both clients and colleagues. Please do not hesitate to contact me if I should be able to provide any further information.

Sincerely yours,

Anka Gleber, Ph.D., MFT #38404
Ravenswood City School District

*** REC 2007268 140947 H8820BE0 DN5A CIPQYAB PQAB (F-DN5 ) ***

SEQY DTE:09/25/07 AN: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 DOC:950 UNIT:TPX PG: 001
INPUT YEARS: INCLUSIVE REQ 2003 - 2005
MEF: QN: 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 NA: J R EVANS DB: 05/1962 SX: F AK:

SUMMARY FICA EARNINGS FOR YEARS REQUESTED

| YEAR | EARNINGS | YEAR | EARNINGS | YEAR | EARNINGS | YEAR | EARNING |
|---|---|---|---|---|---|---|---|
| 2003 | .00 | 2004 | 16568.54 | 2005 | 25612.97 | | |

SUMMARY MQGE EARNINGS FOR YEARS REQUESTED
NO MQGE EARNINGS FOR YEARS REQUESTED

REMARKS
CLAIMS ACTIVITY -- SEE MBR

SOCIAL SECURITY ADMIN...
SEP 25 2007
SAN FRANCISCO, CA

2-16-08.

Part of complaint.
Evidence of Harm Caused —
Earnings for years 2003, 2004 &
2005 —
Significantly less than what I
would have earned
had I not been Locked
out of Logan
Company —

Jose Rocio Evans,
MFT

SOCIAL SECURITY ADMINISTRATION
90 - 7th STREET
1st FLOOR ANNEX
SAN FRANCISCO, CA 94103

August 17, 2007

To Joyce Cooper, Director
Equal Employment Opportunity Commission
Wells Fargo Bank Building
401 B Street, Suite 510
San Diego, CA 92101
Letter sent via Certified mail,
Return receipt requested on August 17, 2007 to Ms. Joyce Cooper.

I am submitting with this letter and my employment Performance reviews from Logan Heights family Health center, dated September 13, May and my last job evaluation from about June 2002.

I am submitting as evidence Verification of enrollment forms and final grade reports from U.C. San Diego Extension Studies, Play Therapy Certificate program. I received A's in most of these courses. This is evidence that I have an excellent Play Therapy training background, as U.C. S. D. is rated 7th in the United States in terms of excellence in education. It shows my initiative and motivation in terms of providing excellent care as a Play Therapist for the children clients of Logan heights Family Counseling center. It was also communicated to me during my job tenure there by Supervisor, Diane Coming.' You are the lead EPTSD clinician, because you take these Play Therapy courses." Most of the other therapists there were not taking these courses. I paid for most of these courses out of my own pocket, except for the course in September 2002, which Family Health Center (FHC) Company paid for me. I took this course about one month before I was Locked out of FHC, on October 11, 2002.

I am also submitting a most important letter dated January 25, 2007 from Anke Gleber, PH.D., MFT. In this letter she describes Norma Lopez, a Mexican employee, how Ms. Lopez was Terminated from FHC due to whistle blowing on Fraud and forgery of Supervisor Eleanor Kreyling. Ms. Lopez's motive was to protect the safety and welfare of Mexican Barrio Logan children clients and their families. Please feel free to contact Ms. Lopez and Ms. Gleber as witnesses. I have provided their phone numbers in my EEOC claim application form.
Also, please feel free to contact Walter D. Rutherford, MFT, Vice president of California Marriage Family therapist Ethics Committee, San Diego. He is an important witness as regards this case. His phone number is: 858) 442-6472. His e-mail is WalterDR @aol.com. I related to him the specifics of this case in September of 2003. By this time, I had written and filed a formal written complaint to CAMFT Ethics Committee. Please see enclosed my letter from March 18, 2003, to CAMFT. I claimed that Supervisors Diane Coming and Yvonne Bentle had violated CAMFT Ethical regulations by Locking me out of FHC before I had a chance to do clinical Termination with these children, some of whom I had worked with for two years. CAMFT refused to assist me in this matter at this time. They sent a letter in which one of the CAMFT members named Diane Coming as 'an unethical person," but said that she was not registered with CAMFT, but Ms. Yvonne Bentle was. Co-worker and Mexican American Therapist Luz Maria encouraged me to complain to CAMFT, stating that in her judgment Ms. Bentle had definitely violated a CAMFT regulation concerning client abandonment. This is also

Ione Rocio Evans, MFT

additional racial discrimination, towards these children clients by Ms. Bentle and Ms. Coming, who authorized the decision to terminate me and Lock me out of FHC.

Mr. Rutherford communicated to me during 2003, that the members on the CAMFT Ethics Committee Board were 'nearly all Caucasian,' and that they were 'wimpy,' concerning this matter.

Also enclosed with this letter: Productivity logs in the form of Attendance sheets from the women's Domestic Violence Support group I facilitated. I created this curriculum. The Director of this Latina women's Substance Abuse residential treatment facility communicated to Ms. Bentle:'The women look forward to Ms. Evans coming to facilitate this group." Ms Bentle communicated this to me shortly before I was locked out of FHC. Co-worker Eliza Mendoza is also an important witness as regards the excellence of my work with the women in this group. FHC was receiving about $15 per client for each of these client signatures.

I am also enclosing a note from a dream I had in December 29, 2005, regarding FHC. This dream shows symptoms of Posttraumatic Stress Disorder. I consulted with a PTSD expert and he told me that an employee with a high position who had been in the organization a long time was more likely to develop PTSD symptoms from being terminated from a Job. I had a high position as a Therapist and I was employed for approximately 2 and a half years. I suffered PTSD and severe depression from being locked out of FHC and have many diary entries documenting this. I had bonded with employees there. This was a big and profound loss for me. I was very enthused about my work at FHC and had given about 10 Presentations and had facilitated groups on my own initiative, including a group for children who had witnessed domestic violence in the Barrio. It was a huge shock and I was very confused as to why I had been Locked out at the time. I suffered homelessness as a result and at one point had to move into the YMCA. I also endured stalking from my apartment manager for months because I could not afford to move somewhere else due to unemployment from FHC. I also had much difficulty finding a home for my beloved cat, marshmallow, at the time.

Enclosing with this letter: My Family Health Centers of San Diego W-2 wage statement for 2002, along with a paycheck stub which shows my pay rate to be that of $20.60 cents an hour. I received pay increases on a yearly basis since I became employed with FHC in 2000.

Enclosed: Legal documents from Board of Behavioral Sciences website, including Anke Gleber, which shows she is a Licensed MFT-Marriage, Family Therapist. Verification that I am now a Licensed MFT, but also a legal document which shows that while at FHC I was an MFT Intern, as I passed my MFT exam around June 4rth, 2004. Legal verification that Mexican American Co-worker Osiris Leon is an MFT Intern, and legal verification that Caucasian Co-worker Susan Catherine Kurtz was an MFT Intern at the time she was my co-worker at FHC.

Ms. Kurtz was treated better than the other co-workers at the EPSDT program at FHC. Supervisor Yvonne Bentle intentionally and falsely represented her at the time as a Licensed MFT. This was my understanding when I attempted to file a claim with the San Diego EEOC around December 2002. It was communicated to me at the time that my claim could not go through because Ms. Kurtz was in a different and higher category Title than myself, as Ms. Kurtz was a Licensed Therapist. It was only later that I accidentally discovered via a computer search that Ms. Kurtz had falsely and intentionally misrepresented her Title to me and to her other co-workers. Ms. Bentle and Ms. Kurtz had even gone so far as to lie and say that Ms. Kurtz had gotten her professional therapists License in another state, but that since California was so short of licensed therapists, the BBS had given her approval to represent herself as a licensed therapist without Ms. Kurtz yet taking the California MFT exam.

Jane Rocio Evans, MFT

Upon discovery of this new information, I called the EEOC again, in order to file this charge. As I am living in San Francisco at this time, I am requesting to schedule a phone interview with one of the EEOC investigators there and then to sign the Charge by having it mailed to my P.O. Box address first and then to mail it back, signed. I would truly appreciate this. My P.O. Box address is: P.O. Box 424886, san Francisco, CA 94142. E-mail: rocioevans@yahoo.com, Telephone: 415) 336-3547.

I do not wish Meditation with this company and am calling for a very serious, through investigation into this matter.

Please look up my records concerning this case. I submitted at the time in 2002 an important piece of evidence in the form of a card that Ms. Diane Coming had sent me, in which she refused to give a professional job reference for me, claiming that, "You were hostile to other co-workers." I am naming this as racial harassment and discrimination from Ms. Coming, who was also my other Supervisor, as I was in 2 programs while at FHC, and she supervised one of them. To my understanding, Ms. Coming and Ms. Bentle gave a reference for Caucasian co-worker Ann Leffington, who had the same job title and job duties, Therapist/MFT Intern while she was a t FHC. Ms. Leffington behaved in a hostile manner towards me and complained to Ms. Coming that I had prevented her from finishing a Presentation she was giving on Play Therapy. I had communicated to Ms. Coming at the time that this was completely untrue. The co-workers present at this Presentation, Osiris Leon, Genoveva, are witnesses to this. I initated a conflict resolution meeting with Ms. Leffington, in order to resolve this matter, but she refused to attend this meeting. Ms. Coming was aware that I had not been hostile to Ms. Leffington. FHC gave me funds to attend a Play Therapy Conference in Portland Oregon in the fall of 2001. During this Conference I spoke with Play Therapist Gary Landreth from the University of Texas. He is a witness that I was not hostile to Ms. Leffington during her Presentation.

Ms. Kurtz was racially harassing me by slandering me to Ms. Coming and telling her that I had locked her out of the Play Therapy room at Sherman Elementary School and had hidden the room keys from her. This is completely false slander, discrimination and hostility from Ms. Kurtz towards me. This never happened. I gave Ms. Coming my side of the story with this, but Ms. Coming never had a meeting with her, Ms. Kurtz and myself in order to resolve this. Ms. Coming never initiated an investigation into this matter while I was at FHC.

Enclosed as well: Certificate of Attendance: Family Law issues in Domestic Violence Court, date: August 25, 2000, and Certificate of attendance in the 5th International conference on Family Violence, date: Sept 2000, which FHC paid for me to attend.

Enclosed: My Certificate in Expressive Arts Therapies from John F. Kennedy University

My Transcripts for grades from John F. Kennedy University, which show an excellent G.P.A.

I wish to state that the same Supervisors treated my co-worker Luis Morales, who is Mexican American and had a similar job title as a therapist and MFT Intern while I was at FHC, similarly in a racially discriminatory manner. He felt forced to resign due to Supervisors forcing him and pushing him to take on about 4 new school sites, according to witness Eliza Mendoza. I saw him break out in tears at one point during a meeting.

It is my understanding that Mr. Morales was retaliated against by these Supervisors and also by Caucasian Coordinator Nora, in response for Mr. Morales initiating a written Petition, which I also signed around June 2000. This Petition called for an investigation into the so called "Layoff" or to my understanding Termination of Mexican coordinator Adela. Adela was escorted out of her office by Security unnecessarily during her last day of work, and thus

Jane Rocio Evans MFT

suffered unnecessary racial discrimination. Caucasian Co-worker Nora replaced her. My understanding is that Diane Coming was racially harassing Adela before her lay off. Ms. Coming did not advocate for Adela to be transferred to another FHC Facility, as this is a large organization. The business reason given for Adela's lay off, to my understanding, is that she did not have a Masters in Psychology or a related field. However, she was hired without one and under that type of agreement.

I am claiming retaliation on the part of Ms. Coming and Ms. Bentle and Nora, in response to my having reported Ms. Coming and Ms. Bentle to the Board of Behavioral Sciences and to CAMFT after I was Locked out. I had a strange phone call from a woman in Mental Health Services in San Diego who wanted to meet at a Starbucks and did not give me the purpose of the meeting. During the meeting, she and another investigator investigated me regarding FHC and told me that" all of my clinical files and clinical work was going to be audited and looked at." It is my understanding that these Supervisors initiated this investigation of me and this surveillance of me. During this meeting, I was asked if I had forged the signatures of clients at FHC. I answered that I had never done this. My understanding is that these Supervisors had accused me of Fraud without just cause in retaliation for complaining about them to CAMFT and to the BBS.

Further Retaliation occurred from the FHC Human Services Director, who blacklisted and defamed me to the San Ysidro Health Center Director during Spring 2003. The Logan Caucasian Director intentionally and in a racially discriminatory manner gave a negative reference to the San Ysidro Director. I was not hired for an important full time Mental Health Position.

I appreciate very much your worker Jorge calling me. Again, it is most important that you review my old file from 2002. I was in two programs at FHC at the time of my employment with them, and my understanding is that an EEOC assessment was missed regarding the program, which Diane Coming is Supervisor of, and the better or worse treatment given to my former co-workers there.

Respectfully,

Jane Rocio Evans, MFT

Ms. Jane Rocio Evans, MFT

December 19, 2007

To Raul Green
Equal Employment Opportunity Commission,
Wells Fargo Building
401 B. Street, Suite 510
San Diego, CA 92101

Re: Charge Number: 488200700749
Jane Rocio Evans vs. Logan Heights Family Health Center

Cc: Joyce Cooper, Director

Sent by fax on December 19, 2007

I received your voice mail this week left on December 17, 2007, requesting that I telephone you in order to answer some questions. I would be more than happy to do so, please e-mail me these questions at at: rocioevans@yahoo.com, and I will respond to them by e-mail. I consulted today with Michelle Nardella at the San Francisco EEOC regarding this matter and she said it was acceptable for me to request that this communication be through e-mail. Some of the EEOC investigators in San Francisco communicate with clients through e-mail. I am requesting and insisting on this form of communication at this time, for purposes of clarity.

Respectfully,

Jane Rocio Evans

Ms. Jane Rocio Evans,
Licensed Marriage, Family Therapist

Page sent via Certified mail to
Olophius E. Perry,
L.A. EEOC.
Charge #: 488200700749

— Jane Rocio Evans,
MFT

Letter sent via Certified mail, return receipt rested on December 22, 2007

To Joyce Cooper, Director and Raul Green, intake Director at
Equal employment Opportunity Commission,
401 B Street, suite 510
San Diego, CA 92101
Jane Rocio Evans v. Logan Heights Family Health center
Charge#: 488200700749

Page 1

I am resubmitting the letter I mailed addressed to Joyce Cooper on August 17, 2007. I requested at the time that the EEOC investigator assigned to my case telephone me in order to discuss the case. I only recently received a phone voice mail message from Mr. Raul Green this Monday, December 17, 2007, nearly 4 months later. Since the August 17,2007 letter was sent via Certified mail, I have the united States postal Website track and confirm printout, a legal document, which verifies that Ms. Cooper did indeed received this letter. I am submitting with this present letter a copy of the fax I sent Mr. Green on December 19, 2007 in which I requested that our communication be through e-mail. I am still requesting and insisting on this communication, but am concerned about the lateness and untimeliness of this phone call from Mr. Green.

Although I appreciate the san Diego EEOc's diligence and patience with me in the thoroughness and accuracy of filing the Charge on Logan heights Family Health center and the letter to sue signed on November 23, 2007 which validates that racial discrimination and Retaliation did occur on the part of this organization, I am requesting and insisting that the San Diego EEOC reopen this case/charge. I am requesting and insisting on a Formal request for a Formal Reconsideration of this matter. In the letter I mailed on August 17, 2007, I stated arguments and I brought forward information for this reconsideration. The letter to sue I received on Nov 23, 2007 states that the EEOC is closing its file because my charge was not timely filed with the EEOC. Thus, my understanding is that the case was not investigated.

My letter dated august 17, 2007 makes strong arguments for the timeliness of the Charge. I waited one month for an appointment with an EEOC intake worker during the Fall of 2002, when the Lockout/termination from Logan heights Family Health center occurred. I presented for a two hour intake appointment around December 2002. Since my Lockout from Logan company occurred on October 11, 2002, my request for a Charge to be filed with the EEOC was completed on a timely basis. Therefore the letter to sue I received on November 23, 2007 is incorrect. To my understanding, I have not violated any statue of Limitations, as it is the error of the EEOC intake worker and the supervisor they consulted with during this intake at the time that my Charge was not taken and investigated in a timely manner.

I am requesting and insisting that this Charge be reopened for purposes that the EEOC seriously and thoroughly investigating this matter. A through and serious investigation, with time and care given to it, is warranted, due to the allegations of Fraud brought forward by witness Anke Gleber, who has the evidence of this fraud from Logan Company Eleanor Kreyling in her possession.

Jane Rocio Evans MFT

Page 2. Letter sent via Certified mail, return receipt requested on January 22, 2007 to Joyce Cooper and Raul Green, San Diego Equal Employment Opportunity Commission. Charge #: 488200700749

I am resubmitting her letter with this letter for your review. Due to Discrimination people involved in this case, Norma Lopez, Mexican employee Luis Morales as well as Mexican American employee Genoveva, and Mexican Manager Adela, an investigation of this matter is most warranted. The Fraud and discrimination allegations to this case are also of a very serious nature, and include minor Mexican children and Mexican monolingual parents, whose rights have been violated and who have suffered discrimination from this Supervisor.

I also wish to clear up my professional reputation in this matter. I am hoping that what part of this investigation may accomplish is to uncover the slander and racial discrimination from Sue Kurtz and Anne Leffington, Caucasian employees. I am alleging that my lockout had much to do with their discrimination, a reasonable suspicion on my part. This needs to be investigated so that the chances of this happening to the next employee are reduced.

I met with Equal Employment Opportunity Commission Supervisor Michelle Nardella on December 19, 2007. She recommended that I ask for a Formal Reconsideration and that I bring forward information for reconsideration. I communicated to her that I had already brought forward this information via Certified mail last August 2007, to the San Diego EEOC.

To my understanding, since this is completely the error of the San Diego EEOC as I brought my Charge to be filed on a timely basis, including bringing supporting documentation w with me to the intake interview, including the Logan Termination letter dated October 11, 2007 and the card mailed to me by Supervisor Diane Coming stating that she could not give me a professional reference due to my "being hostile to other co-workers,' it is completely reasonable for this case to be reopened, in order that a serious investigation may take place regarding this matter. Again, I was not given informed consent around December 2002 that I could appeal the EEOC's decision not to take the Charge and investigate it, therefore I remained completely unaware and uninformed concerning my legal rights in the matter. I had never been to any EEOC office before in my life at the time. This can be verified through the Computer.

I asked EEOC personnel on December to review my case via the computer. It was communicated to me that my case/Charge was listed as 'currently in Enforcement.' On October 2, 2007, there had been "changes in addition to the Charge.' It was communicated to me at the time by San Francisco EEOC personnel that asking for communication from Raul Green , Roger Owen or any other San Diego EEOC personnel "is appropriate.'

Ms. Nardella communicated to me that the Charge/case had been closed out for non-jurisdiction. I am upset that this matter was decided without my request for communication between myself and Mr. Green being attended to on a timely basis, or before the letter to sue was issued on Nov 23, 2007.

Also, I requested in writing that a record of my having presented at the EEOC office on Dec 2002puted on the computer, and this has not occurred. In addition, I requested that the records, including the notes the intake worker took at this 2 hour meeting be sent to me and I have not yet received these. I requested the termination letter

Jane Rosa Evans, MFT

and the copy of the card from Ms. Coming that the intake worker took. I am again requesting and insisting these records for the second time, again in writing. Please mail these records via Certified mail to me to ensure that I have received.

Page 3. Letter sent via Certified mail, return receipt requested on January 22, 2007 to Raul Green and Joyce Cooper, San Diego Equal Employment Opportunity Commission. Charge#: 488200700749

I am also requesting and insisting on an investigation of the errors that occurred in 2002 to be made both by the San Diego EEOC and by the Los Angeles EEOC branch. Please mail me the records and the results of this investigation by January 10, 2008. Please send the written records and results of this investigation by certified mail as well, to ensure I receive these.

Again, I am taking this case most seriously, particularly since I suffered serious harm and Retaliation , in particularly from the Logan Human Resources Director, who also needs to be seriously investigated by the EEOC. I ended up having to walk in the sun for hours since I could not afford a bus pass, I ended up not getting enough to eat, being Blacklisted by the HR Director and thus not procuring employment until January 2004, even though I was actively searching for employment and going on job interviews. To this day, I do not receive references from Ms. Coming and need to explain this to prospective employees.

I am requesting and insisting on a response sent to this letters via certified mail by January 10, 2007. Please mail a response to: P.O. Box 424886, San Francisco, Ca 94142. E-mail: rocioevans@yahoo.com. Please feel free to ask any further additional questions of me by e-mail.

Cc: Los Angeles EEOC Director

Jane Rocio Evans MFT

Respectfully, Ms. Jane Rocio Evans,
Licensed Marriage, Family Therapist

Letter sent via Certified mail, return receipt requested on December 28, 2007

Attention: Olophius E. Perry
Equal Employment Opportunity Commission
Roybal Federal Building
255 East Temple Street, 4rth Floor
Los Angeles, CA 90012

Re: Charge Number: 488200700749
Jane Rocio Evans v. Logan Heights Family Health Center

I am extremely concerned as I have not yet had a written response to the letters I have sent via Certified mail, return receipt requested addressed to Joyce Cooper and Raul Green at the Equal Employment Opportunity Commission, San Diego office. I am submitting with this letter 3 copies of the united States Postal Office certified mail receipts and printouts from the U.S. Postal website, which serve as legal documents that verify that my letters were received by these individuals, as well as a letter I have sent thus far to the Los Angeles EEOC office, addressed to you which was also received by your office.

The first letter, certified mail receipt Number: 7007 1490 0002 2516 6343, was delivered in the San Diego EEOC office on August 20, 2007. The second letter, Certified receipt number: 7005 0390 0003 6182 7555, was delivered at the San Diego EEOC office on October 29, 2007. The next letter, Certified mail receipt: 7005 0390 0003 6182 7562, was delivered addressed to you at the Los Angeles EEOC office on November 1, 2007- see proof attached.

I am requesting and insisting once again, that you respond to the letter you received on November 1, 2007 and that you respond by January 7, 2008 to this letter I am mailing today by Certified mail in writing to this address: P.O. Box 424886, San Francisco, CA 94142.

I am alarmed that I have not yet received any responses to my letters, which is professional courtesy to respond to.

The matter concerned is very urgent and important as it concerns Mexican American schoolchildren in Barrio Logan, San Diego, and Medi-Cal Fraud towards their monolingual Spanish Speaking parents.

I sent a letter to you by Fax recently and another one by certified mail to Ms. Cooper and Mr. Green on December 22, 2007. Perhaps they have been away on Christmas vacation at this time, however, I stated in the letter that the matter is very important that I am requesting and insisting on a written response to it.

In this December 22, 2007, letter, I stated that I had consulted with San Francisco EEOC Personnel Michelle Nardella and that she had recommended that I make a Formal Request in writing for this Charge to be reopened, on the basis that the Statue of Limitations was cooperated with to begin with around December 2002, when I first filed this Charge with the San Diego EEOC office in person. I spent 2 hours with an intake worker and brought concrete evidence with me for this Charge, including the Termination letter from this company which did not have a business reason written on it

Jane Rocio Evans, MFT

Page 2. Letter sent via Certified mail, return receipt requested on December 28, 2007 . letter addressed to Olophius E. Perry, Los Angeles Equal Employment Opportunity Commission. Charge No.: 488200700749.

For my termination and thus, to my understanding, the Termination is defined as a Lockout. I also brought a card mailed to me from Supervisor Diane Coming, in which she states that her business reason for not giving me a professional work reference is that 'you were hostile to co-workers.' These two documents are very strong evidence of racial Discrimination and Retaliation on the part of Logan Heights Family Health center. It is therefore the fault of San Diego EEOC personnel that this case was not taken by them at the time to be investigated.

I am thus insisting that there is no Statue of Limitations for me to overcome, as I was right on time with this matter. Given the serious nature of Medi-Cal Fraud involved in the case, as well as a respectable witness who has come forward and written a letter attesting to the Medi-Cal fraud which has occurred as well as to my professionalism in regards my behavior with co-workers, this matter can be reasonably taken for investigation at this time and reopened.

I am requesting and insisting that this Charge be reopened for a most serious and through investigation by the San Diego EEOC, including the EEOC requesting records such as wage records, productivity records, etc. I am also requesting and insisting that the EEOC contact important witnesses to this case, including Anke Gleber,Ph. D., Norma Lopez, Luis Morales , the HR director and co-worker Genoveva. The Hr Director wrote me a letter around Spring 2003 in which she stated that co-worker Genoveva 'wanted me to have a box of toys,' which I could come by to the Logan Family Health Center Human Resources office" to pick up." I am seriously disturbed and concerned that the HR Director was involving Genoveva, who is Mexican American, in this matter. I am requesting and insisting that the San Diego EEOC investigate whether Genoveva knows anything about this matter. The HR Director is Caucasian, and I experienced this letter as Retaliation from her. I also purchased these toys or sand play miniatures with money given to me by this Logan Company. I submitted receipts to Diane Coming and to Supervisor Yvonne Bentle for the purchase of these toys. These Supervisors are aware of this, so my coming by to pick up this box of toys would have been stealing from the company by me. To my understanding, this would have also negated the company's Lockout of me. Naturally I refused to come by to pick this up at the time, since it did not belong to me to begin with. I am requesting and insisting that this HR director be investigated as to whether these supervisors communicated to her that the toys belonged to the company and that they had received receipts for these items from me.

Please feel free to contact me by e-mail if you have any questions about this. I can be reached at: rocioevans@yahoo.com. I am requesting and insisting on a written response to this letter at: P.O. Box 424886, San Diego, CA 94142.

I am requesting and insisting that you please investigate the San Diego EEOC office regarding this matter. I am taking the reopening of this case extremely seriously and am continuing to consult with an attorney regarding this.

P.S. I am also submitting with this letter an e-mail I sent to Michelle Nardella on December 27, 2007.

Respectfully, Jane Rocio Evans, MFT

Jane Rocio Evans, MFT

7



University of Phoenix
Thinking ahead.
ONLINE PROGRAMS
ASSOCIATE'S DEGREES
Associate of Arts in Business
Associate of Arts in Health Care Administration
Associate of Arts in Information Technology
BACHELOR'S DEGREES
Bachelor of Science in Business/Management
Bachelor of Science in Criminal Justice Administration
Bachelor of Science in Management
MASTER'S DEGREES
Master of Business Administration
Master of Arts in Education
Master of Information Systems
[redacted]



Watch Christina perform live!



This message is not flagged. [ Flag Message - Mark as Unread ]    Printable View

**Date:** Thu, 27 Dec 2007 15:21:22 -0800 (PST)

**From:** "rocio evans" <rocioevans@yahoo.com>    Add to Address Book    Add Mobile Alert

**Subject:** thank you

**To:** Michelle.Nardella@EEOC.Gov

To Ms. Nardella, I wish to thank you for meeting with me recently. Your guidance regarding Logan Heights Family Health Center was most helpful and I wrote to them recently about reopening the Charge in order to help latino schoolchildren. I realize you're busy and appreciate your extra time with this. Jane Rocio Evans.

Looking for last minute shopping deals? Find them fast with Yahoo! Search.

Check Y! Mail on your phone!

Netflix Only $4.99/mo.

The best family plans.

Working? Degrees fast as 2 yrs.



Page sent via Certified mail to Olophius E Perry, L.A. EEOC Charge #: 488200700749



Copyright © 1994-2007 Yahoo! Inc. All rights reserved. Terms of Service - Copyright/IP Policy - Guidelines
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy

Jane Rocio Evans, MFT

this page
sent via
Certified mail to
Olophius E. Perry
L.A. EEOC
on 12-28-07.

Charge No:
488200700749

Xerox copy kept
for my records.

— Jane Ricato
Swans, MFT

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

LOS ANGELES CA 90012

| | | |
|---|---|---|
| Postage | $ $1.31 | 0003 |
| Certified Fee | $2.65 | |
| Return Receipt Fee (Endorsement Required) | $2.15 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $6.11 | 10/26/2007 |

SAN FRANCISCO CA FOX PLAZA OCT 26 2007 USPS

Sent To Olophius Perry, District Director
Street, Apt. No.; or PO Box No. Equal Employment Opportunity Commission
City, State, ZIP+4 255 East Temple St. 4th Floor, Los Angeles 90012

PS Form 3800, June 2002 See Reverse for Instructions

7005 0390 0003 6182 7562

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

SAN DIEGO CA 92101

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | $2.33 | |
| Return Receipt Fee (Endorsement Required) | $2.65 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $2.15 | |
| Total Postage & Fees | $ $0.00 | |

WEBER ST. STATION AUG 17 2007 USPS

EEOC

$7.13 08/17/2007

Sent To Joyce Cooper, Director, San Diego
Street, Apt. No.; or PO Box No. Wells Fargo Building, 401 B
City, State, ZIP+4 St. Suite 510, San Diego, CA. 92101

PS Form 3800, August 2006 See Reverse for Instructions

7007 1490 0002 2516 6343

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

SAN DIEGO CA 92101

| | | |
|---|---|---|
| Postage | $ $1.31 | 0003 |
| Certified Fee | $2.65 | 09 |
| Return Receipt Fee (Endorsement Required) | $2.15 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $6.11 | 10/26/2007 |

SAN FRANCISCO CA FOX PLAZA OCT 26 2007 USPS

Sent To Joyce Cooper, Director, Equal
Street, Apt. No.; or PO Box No. Employment Opportunity Commission
City, State, ZIP+4 401 B St. Suite 510, San Diego, CA. 92101

PS Form 3800, June 2002 See Reverse for Instructions

7005 0390 0003 6182 7555

UNITED STATES POSTAL SERVICE®

Home | Help | Sign In

Track & Confirm FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7007 1490 0002 2516 6343**
Status: **Delivered**

Your item was delivered at 12:33 pm on August 20, 2007 in SAN DIEGO, CA 92101. A proof of delivery record may be available through your local Post Office for a fee.

Additional information for this item is stored in files offline.

Restore Offline Details > ? Return to USPS.com Home >

**Track & Confirm**

Enter Label/Receipt Number.

Go >

Site Map Contact Us Forms Gov't Services Jobs Privacy Policy Terms of Use National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved. No FEAR Act EEO Data FOIA

Page sent via Certified mail on 12-28-07 to Olophius E. Perry, L.A. EEOC.

— Jane Rocio Ware, MFT

UNITED STATES POSTAL SERVICE

Home | Help | Sign In

Track & Confirm FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7005 0390 0003 6182 7555**
Status: **Delivered**

Your item was delivered at 1:01 pm on October 29, 2007 in SAN DIEGO, CA 92101. A proof of delivery record may be available through your local Post Office for a fee.

Additional information for this item is stored in files offline.

Restore Offline Details > ? Return to USPS.com Home >

Track & Confirm
Enter Label/Receipt Number.
Go >

Site Map Contact Us Forms Gov't Services Jobs Privacy Policy Terms of Use National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved. No FEAR Act EEO Data FOIA

Page sent via Certified mail on 12-28-07 to Olophius E. Perry, L.A. EEOC. Charge No. 488200700749

— Jove Rocio Wong, MFT

UNITED STATES POSTAL SERVICE

Home | Help | Sign In

Track & Confirm FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7005 0390 0003 6182 7562**
Status: **Delivered**

Your item was delivered at 2:09 pm on November 01, 2007 in LOS ANGELES, CA 90012. A proof of delivery record may be available through your local Post Office for a fee.

Additional information for this item is stored in files offline.

Restore Offline Details > ? Return to USPS.com Home >

Track & Confirm
Enter Label/Receipt Number.
Go >

Site Map Contact Us Forms Gov't Services Jobs Privacy Policy Terms of Use National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved. No FEAR Act EEO Data FOIA

Page sent via Certified mail on 12-28-07 to Olophius E. Perry, L.A. EEOC.
Charge #: 488200700749

— Jane Rocio Wong, MFT

# Board of Behavioral Sciences

1625 North Market Boulevard, Suite S 200
Sacramento, CA 95834
Main Line Phone Number: (916) 574-7830

## Licensee Information

| | |
|---|---|
| **Licensee Name:** | EVANS ROCIO |
| **License Type:** | MARRIAGE AND FAMILY THERAPIST |
| **License Number:** | 40689 |
| **License Status:** | CLEAR Definition |
| **Expiration Date:** | May 31, 2008 |
| **Issue Date:** | June 07, 2004 |
| **Address:** | PO BOX 424886 |
| **City:** | SAN FRANCISCO |
| **State:** | CA |
| **Zip:** | 94142 |
| **County:** | SAN FRANCISCO |
| **Actions:** | No |

## Related Licenses/Registrations/Permits

| Number | Name | Type | Status | Actions |
|---|---|---|---|---|
| 35837 | EVANS ROCIO | INTERN - MARRIAGE AND FAMILY THERAPIST | CANCELLED | No |

## Public Disclosure

No information available from this agency

**This information is updated Monday through Friday - Last updated: MAR-16-2008**

*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of*

*interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back