Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142

FILED
2008 SEP -9 AM 9:28
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY g DEPUTY

NUNC PRO TUNC
SEP 5 2008

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JANE ROCIO EVANS, MFT

Plaintiff,

Vs

LOGAN HEIGHTS FAMILY HEALTH CENTER,

Defendant

Case NO 08 CV 0315
Judge: Hon. Dana M. Sabraw

Opposition Papers to Defendant's Motion to Dismiss.

**NOTICE OR MOTION NOT TO DISMISS COMPLAINT OF PLAINTIFF, IN RESPONSE TO DECLARATION OF CORTNEY L. BUNT**

Plaintiff is respectfully requesting on a notice or motion not to dismiss complaint of Plaintiff regarding this matter, in challenge or response to declaration of Defendant attorney Cortney l. Blunt, dated July 15, 2008. Plaintiff submits as evidence for this **EXHIBIT 31: Denny v. Universal City Studios Inc. 6 pages, submitted with this motion. In this case, Holland v. Union pacific railroad Co-C052833, 'complainants were misled 'through no fault of their own' as a result of inaccurate advice from the DFEH. Here, the DFEH postponed Holland's interview until late June and assured him that submission of the questionnaire would make his complaint timely. Holland, on the other hand, diligently pursued his remedy and reasonably relied on the DFEH's representations regarding the deadline. Accordingly, it would be**

**Case No 08 CV 0315**

**inequitable to punish him for the 'slight degree' to which his administrative complaint was tardy." In addition, Plaintiff has submitted to this Court Exhibits 15-30, which document the evidence to show why Plaintiff's Charges can be Reasonable accepted as timely.**

**Dated; September 4,2008**

Case No 08 CV 0315 Judge Dana M. Sabraw

In addition, Plaintiff responds in response to Bunt's arguments, that these arguments are, with all due respect, **ridiculously oversimplified as regards the timeliness of this case, as these arguments do not address the extenuating circumstances regarding the Statue of Limitations as regards the san Diego EEOC in this case.** In Exhibits 15-30, Plaintiff through many hours of diligent research pursued the remedy, consulted with the San Francisco EEOC, the San Diego and Los Angeles EEOC regarding this case and has evidence to verify these communications in these exhibits. As stated in exhibits 15-30, Plaintiff did present in a timely manner to the San Diego EEOC around December 2002, a few months after she was Locked out from Defendant's company. Plaintiff waited one month for this appointment and spent 2 hours with an EEOC intake worker. **Plaintiff at this time was misled, through no fault of her own, and given inaccurate advice from the EEOC at this time.** Plaintiff was not told at this time that she had defamation and whistle blowing charges on this company which were valid, and was not given attorney referrals. Plaintiff was misled at the time into believing that she did not have a valid legal case with Defendant, by the EEOC. In addition, the EEOC failed to take Plaintiff's case, when Plaintiff's case was very valid, as Plaintiff had a Lockout and a Termination from this company. In addition, Plaintiff had brought evidence in the form of a card written by Defendant manager Diane Coming, which showed racial discrimination and defamation from Coming. This card stated that Plaintiff was not going to be given a professional Reference by Coming" because you have been hostile to co-workers.' San Diego EEOC did not input into the computer the fact that Plaintiff had presented for this interview with them, as was their legal duty to do, as communicated to Plaintiff by the San Francisco

EEOC. The San Diego EEOC further acted in a manipulative manner by then telephoning Plaintiff shortly thereafter and asking her,' do you want us to call your company and tell them that your case was not accepted?' The San Francisco EEOC asked Plaintiff if the San Diego EEOC had been making 'a threat to Plaintiff' when they said this. San Diego EEOC gave as a business reason why they had not taken Plaintiff's case that, although Susan Kurtz had been treated better or in a differentially preferential manner by Defendant Supervisors, she was a licensed professional, and therefore not in the same job Category as Plaintiff." Years later, Plaintiff, through chance, looked on the Board of Behavioral Sciences website and found out that Susan Kurtz's was not only **delinquent** in her BBS registration, but that she was not a licensed therapist, as Logan supervisors had misled Plaintiff to believe. Thus the burden of this falls on the San Diego EEOC and on Defendant's company, for misrepresenting Kurtz professional Title. Kurts had the exact same job title as Plaintiff, Therapist, and Plaintiff is Bilingual Spanish speaking, thus more qualified, to her understanding, than Kurtz. Kurtz also committed an Impropriety during her employment at Defendant's company and asked a teacher out on a romantic date during the time of a children's consultation with this teacher. This teacher REPORTED THIS VIOLATION TO THE SCHOOL PRINCIPAL, WHO THEN CONTACTED Kurtz supervisor at Defendant's company. Despite this gross boundary violation, Kurtz was not terminated or Locked out of this company. Thus, she was definitely treated better, as was defined by San Diego EEOC. In addition, Gary Landreth is a witness that Plaintiff was not acting in a hostile manner towards Anne Leffington, and can be contacted as a witness regarding this. Anne Leffington was not punished by in

the same way as Plaintiff was, to Plaintiff's understanding. **As regards the whistle Blowing nature of this case, due to the fact that it involves serious fraud regarding Monolingual Spanish speaking schoolchildren in Barrio Logan and their parents, and the fact that witnesses such as Anke Gleber and Norma Lopez have come forward in this matter, Plaintiff is respectfully requesting that this matter be at least discussed in a Hearing, in order to address the serious civil rights violations which have occurred**. Plaintiff is here today in San Diego and rode the Greyhound bus for at least 13 hours from San Francisco, in order to address this matter and to be present tomorrow for the Hearing. Plaintiff was not aware until today that this Hearing had been cancelled. Plaintiff lacks experience in these matters in terms of representing herself pro se and was not aware of the deadline in which to respond to Bunt's notice to dismiss this Complaint. Plaintiff received paperwork from Bunt last Saturday, August 30, at the time of a holiday weekend, thus Plaintiff is responding at her earliest convenience. Again, Plaintiff was not aware that the Hearing had been cancelled and made travel plans, including carefully taking time off from work and rescheduling time with her clients in order to be here in San Diego, today. Thus, Plaintiff is sincerely and seriously pursuing



this remedy and respectfully requests and insists that this document or motion today be accepted by this Judge, along with exhibits 15 to 30, which carefully document Plaintiff's argument in this case. Plaintiff requests that this matter not be dismissed at this time, especially without a discovery process having taken place first, for purposes of assisting and protecting these children and their families in the Barrio and the student and Interns

Case No 08 CV 0315 Judge Dana M. Sabraw

now working at this Company, who assists this population. Again, Plaintiff is respectfully requesting for this Judge to set aside a Judgment for this case to be dismissed based on illogical or unreasonable oversimplification of the facts and gross disregard for the extenuating circumstances and whistle blowing nature of this case by Defendant.

Date: September 4, 2008

Respecfully,

Jane Rocio Evans, MFT

Jane Rocio Evans, MFT

**Joel Bryant - Daily Journal Opinion**

**From:** <david.offen-brown@eeoc.gov>
**To:** <david.offen-brown@eeoc.gov>
**Date:** 8/30/2007 3:44 PM
**Subject:** Daily Journal Opinion

---

DAILY JOURNAL DAILY APPELLATE OPINION
http://www.dailyjournal.com
© 2007 The Daily Journal Corporation. All rights reserved.

------------------------------------------

California Courts of Appeal - 3rd District
August 29, 2007
Holland v. Union Pacific Railroad Co. - C052833
SUMMARY

Tim Holland worked as a machinist at Union Pacific Railroad Co. (UPRR). He alleged UPRR failed to make proper accommodations for his bipolar disorder and placed him on medical leave on July 2, 2002, refusing to let him work at all. Holland filed an administrative complaint on July 15, 2003 after a representative from the Dept. of Fair Employment and Housing (DFEH) assured him that his pre-complaint questionnaire would satisfy the deadline. Holland appealed from the court commissioner's grant of summary judgment in UPRR's favor, contending his failure to file a timely administrative complaint was excusable. Reversed and remanded. Government Code Section 12960 provides, in pertinent part, "No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice occurred." In Holland's case, the one-year period began to run on July 2, 2002, when UPRR placed him on medical leave. His July 2003 administrative complaint was therefore untimely on its face. However, [redacted] provided an exception where complainants were misled "through no fault of their own" as a result of inaccurate advice from the DFEH. Here, the DFEH postponed Holland's interview until late June and assured him that submission of the questionnaire would make his complaint timely. Holland, on the other hand, diligently pursued his remedy and reasonably relied on the DFEH's representations regarding the deadline. Accordingly, it would be inequitable to punish him for the "slight degree" to which his administrative complaint was tardy.

Order and Opinion

[redacted]
Plaintiff and Appellant,
v.
UNION PACIFIC RAILROAD COMPANY,
Defendant and Respondent.

No. C052833
(Super. Ct. No. S CV 14032)
California Court of appeal

Exhibit 31

Third Appellate District
(Placer)
Filed August 29, 2007

ORDER MODIFYING OPINION
AND CERTIFICATION FOR
PUBLICATION IN FULL
[NO CHANGE IN JUDGMENT]

APPEAL from a judgment of the Superior Court of Placer County, Margaret E. Wells, Commissioner Judge. Reversed and remanded.

Larry Lockshin, Esq., Larry Lockshin and Diana Esquivel for plaintiff and appellant.

Randolph, Cregger & Chalfant, Thomas A. Cregger and Stephanie L. Quinn for defendant and respondent.

THE COURT:

It is ordered that the opinion filed herein on July 30, 2007, be modified as follows:

On page 1 of the opinion, in the third sentence of the first paragraph, add the words "as a judge pro tem" between the words "lacked jurisdiction" and "over the matter" so that the sentence reads:

"In his timely appeal from the ensuing judgment, the plaintiff first contends that the court commissioner who heard the motion lacked jurisdiction as a judge pro tem over the matter."

On page 1 of the opinion, following the third sentence of the first paragraph, add the following sentence:

"In the interests of judicial economy, we decline to reach the issue because the substantive issue will only return to us after remand."

On page 1 of the opinion, replace the last sentence of the first paragraph, which reads "We shall reverse." with the following:

"We conclude that under the established doctrine of equitable estoppel, his untimely administrative complaint is not a bar to his action at law because he diligently pursued his administrative remedy and reasonably relied on the conduct of administrative officials in believing that the limitations period was not a concern. We also conclude that the judge pro tem erred in sustaining hearsay objections to the evidence documenting this conduct, because the plaintiff was not introducing it as proof of the matters asserted therein, but as proof of the basis for his failure to file a timely administrative complaint. We therefore shall reverse the judgment and remand the matter to address the other grounds in the motion for summary judgment."

The opinion in the above-entitled matter filed on July 30, 2007, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in full in the Official Reports and it is so ordered.
There is no change in the judgment.

FOR THE COURT:
DAVIS, Acting P.J.
NICHOLSON, J.
HULL, J.

TIM HOLLAND,
Plaintiff and Appellant,
v.
UNION PACIFIC RAILROAD COMPANY,
Defendant and Respondent.

No. C052833
(Super. Ct. No. S CV 14032)
California Court of appeal
Third Appellate District
(Placer)
Filed July 30, 2007

Plaintiff Tim Holland filed this action alleging employment discrimination. Defendant Union Pacific Railroad Company (UPRR) successfully moved for summary judgment. In his timely appeal from the ensuing judgment, the plaintiff first contends that the court commissioner who heard the motion lacked jurisdiction over the matter. On the merits, he asserts that his failure to file a timely, verified administrative complaint was excusable. We shall reverse.

Facts

In light of the narrowness of the dispositive issue, the complaint's allegations--ordinarily the starting point in our review de novo of a motion for summary judgment (*Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 734-735)--are largely irrelevant. The plaintiff is a machinist in UPRR's repair shops in Roseville. He contended that UPRR failed to make proper accommodations for his chemical brain disorder, "to wit: Bypolar [*sic*] Disorder and depression with acute episodic anxiety," in the period between July and October 2002 and instead refused to allow him to work at all. He filed a timely administrative complaint with the Department of Fair Employment and Housing (DFEH), which issued a letter allowing him to pursue his legal remedies.

In moving for summary judgment, UPRR asserted the following undisputed facts. The plaintiff completed his apprenticeship as a machinist, apparently in 2002, the duties of which include locomotive maintenance. The performance of these duties requires a machinist to move locomotives. In July 2002, he was asked for the first time to become certified to move locomotives. He said his medications made this an unsafe activity for him to perform. UPRR asserted that it was not aware of this restriction until that time, when plaintiff gave it a copy of a letter from a doctor dated February 11, 1999. On July 2, UPRR placed him on a medical leave of absence while it evaluated his fitness for duty. After completing various evaluations, UPRR allowed the plaintiff to return to work in October 2002 with the restriction that he could not move locomotives. The plaintiff filed an administrative complaint with DFEH on July 15, 2003, received notice of his right to pursue legal remedies in July 2004, and filed the present legal complaint in November 2004.

The plaintiff did not dispute these facts in any manner pertinent to the present appeal.[1] As additional facts, he asserted that after consulting with present counsel (whom he did not retain until after receiving permission to pursue his legal remedies), he had met with a DFEH representative in May 2003, who told him that he would receive a letter scheduling a formal interview. When he expressed concern over the imminent one-year deadline for filing his complaint (as measured from the date that UPRR suspended him from work), the DFEH representative assured him that completing a pre-complaint questionnaire would satisfy this deadline. He later met with the DFEH representative again in late June 2004, providing her with the completed questionnaire. The DFEH mailed him a completed administrative complaint in mid-July 2004, which he promptly signed and returned to the agency. The statements of the DFEH representative appeared in the plaintiff's declaration in opposition to the motion.

UPRR's notice had set the motion for Department 1 of the trial court, which apparently was the courtroom of a court commissioner. The plaintiff filed an objection to a commissioner hearing the matter, and requested an assignment to a judge.

In its reply, UPRR objected to consideration of the hearsay statements of the DFEH representative. In opposition to the evidentiary objection, the plaintiff asserted that the hearsay statements were admissible under Evidence Code section 1250 (the "state of mind" hearsay exception).

At the hearing, the plaintiff asserted his objection to the court commissioner adjudicating the motion, contending that this was the first assignment to the commissioner. The commissioner stated that the plaintiff had appeared by telephone at a case management conference in May 2005[2] at which the plaintiff had failed to raise any objection after the court clerk announced that the commissioner would be presiding.[3] The plaintiff's attorney did not have an independent recollection of the conference from the previous year. She asserted, however, that even if she had failed to object to the court commissioner's exercise of jurisdiction over the matter at the time, the case management conference was an ancillary proceeding to the present motion, and therefore her previous deemed stipulation did not apply. UPRR did not provide any evidence or argument on the issue, other than to mention an ex parte motion to continue trial that the plaintiff had submitted to the presiding judge.[4]

In her ruling, the court commissioner rejected the theory that the case management conference was ancillary to the present matter, and therefore assumed jurisdiction as a judge pro tem. On the substance of the motion, the judge pro tem sustained the hearsay objection to the statements of the DFEH representative, which eviscerated the evidentiary support for the plaintiff's invocation of an equitable excuse for his tardy administrative complaint, and also ruled that the plaintiff had not provided any authority for such a doctrine in proceedings involving the DFEH.

Discussion

I

On appeal, the plaintiff again contends there is no evidence in the record that a May 9, 2005, hearing was held, notwithstanding the judge pro tem's apparent resort to an entry in the court record not included in the record on appeal. The plaintiff, however, does not discuss the remarks of his counsel in the stipulation supporting the motion for a continuance of the trial date (to which defense counsel referred at the hearing on the motion for summary judgment): "Plaintiff brought these pre-existing trial dates to the Court's attention in his . . . Case Management Statement, *and at the . . . Case Management Conference, plaintiff's counsel again informed the Court* that [the designated] trial [date] would conflict with trials already set in other cases." (Italics added.)

However, regardless of whether the plaintiff's counsel was present at a case management conference where the court commissioner was presiding, and regardless of whether that conference was ancillary to the motion for summary judgment, the issue ultimately is immaterial. Even if we were to concur that the judge pro tem lacked jurisdiction to hear the motion, there would not be any purpose in reversing the judgment and remanding the matter, only to exercise de novo review of the same materials on appeal from a ruling of a judge of the trial court (as our remittitur would not authorize reopening the motion), if we believe the outcome would be the same on the substantive timeliness issue. This only wastes scarce judicial resources and causes needless expense to the parties. We therefore proceed to the matter of whether the plaintiff's failure to file a timely administrative complaint is excusable.

II

Government Code section 12960 provides in pertinent part that "(b) Any person claiming to be aggrieved by an alleged unlawful [employment or housing] practice may file with the [DFEH] a verified complaint, in writing, that shall . . . set forth the particulars thereof and contain other information as may be required by the [DFEH]. . . . [¶] . . . [¶] (d) No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice . . . occurred[.]"

Before maintaining a legal action, a plaintiff must exhaust the administrative remedy of filing a timely complaint with the DFEH and obtaining permission to pursue legal remedies. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492 (*Romano*).) The one-year period specified in the statute begins to run when the administrative remedy accrues, which is the occurrence of the unlawful practice. (*Id.* at p. 493.) In the present case, the allegedly unlawful suspension occurred on July 2, 2002, and therefore the one-year period began to run on that date. (Cf. *ibid.* [unlawful firing occurs on date that employment actually ends].)[5] As a result, the plaintiff's July 2003 administrative complaint

was not timely on its face, his allegations to the contrary notwithstanding. This made it his burden to establish an exception that would deem the administrative complaint to be timely. (*Westinghouse Elec. Corp. v. County of Los Angeles* (1974) 42 Cal.App.3d 32, 37 [plaintiff's burden of proof on exhaustion of administrative remedy].)

The exhaustion of an administrative remedy is a *procedural prerequisite* to an action at law, and the failure to exhaust it does not divest a trial court of *subject matter jurisdiction*. (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 896-900 (*Keiffer*) [it is a defense subject to forfeiture]; cf. *Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 222 [same].) As a result, courts can resort to equitable exceptions to this condition precedent. (Cf. *Zipes v. Trans World Airlines, Inc.* (1982) 455 U.S. 385, 393 [71 L.Ed.2d 234] (*Zipes*) [need for timely filing of administrative complaint under Title VII subject to equitable exceptions];[6] *Rodriguez v. Airborne Express* (9th Cir. 2001) 265 F.3d 890, 900 (*Rodriguez*) [interpreting California law]; *Dept. Fair Empl. & Hous. v. Cairo* (1984) No. 84-04, FEHC Precedential Decs. 1984-1985, CEB ___, p. ___ [1984 WL 54284, *7-*8] (*Cairo*) [may apply equitable exceptions in deciding timeliness of administrative complaint][7].) As just mentioned above, one exists for continuing violations. (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 349.) Another applies where complainants reasonably are misled through no fault of their own as a result of inaccurate advice from the DFEH. (*Denney v. Universal City Studios, Inc.* (1992) 10 Cal.App.4th 1226, 1233-1234 [DFEH employee declined to include alternate theory in complaint that plaintiff raised during intake process; failure to exhaust remedy on alternate theory excused]; see *Cairo*, *supra*, CEB ___, p. ___ [1984 WL 54284, *7-*8]; *Rodriguez*, *supra*, 265 F.3d at pp. 894-895, 901-902 [same]; *Albano v. Schering-Plough Corp.* (9th Cir. 1990) 912 F.2d 384, 386-388 [same].) UPRR's attempt to distinguish these cases as involving partially timely complaints is unavailing, because the focus of the decisions was on the lack of any compliance with the exhaustion requirement for the tardily added unlawful practices.[8] Having determined that equity can indeed excuse an untimely administrative complaint, it remains to be seen whether the plaintiff submitted facts warranting relief.

According to the plaintiff's declaration, he consulted with an attorney and initiated the DFEH process with the DFEH by mid-May 2002, when nearly two months remained in which to file his charge. He raised the imminence of the July 2 deadline in his initial interview, at which point he was assured that he need not be concerned about it. The DFEH postponed its interview with him until late June, again assuring him that his submission of his questionnaire was sufficient to make his claim timely. DFEH did not send him a formal administrative complaint until after the one-year period had expired. Under these circumstances, it would be inequitable to fault the plaintiff for the slight degree to which his administrative complaint was tardy, as he was diligent in pursuit of his remedy, raised the issue with the DFEH, and relied on the DFEH's assurances that he would meet the deadline.

UPRR asserts that this evidence supporting the application of an equitable exception was inadmissible hearsay. Both UPRR and the judge pro tem apparently have focused on the use of extrajudicial statements but failed to consider that these statements were not offered as proof of the facts that they contained. Rather, this is a typical example of the *nonhearsay* use of an extrajudicial statement "to prove, as relevant to a disputed fact in an action, that the . . . hearer . . . obtained certain information by hearing . . . the statement and, *believing such information to be true*, acted in conformity with such belief." (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) Hearsay & Nonhearsay, § 1.4, p. 57, italics added.) As this classic treatise explains, "The statement is *not* hearsay, since it is the hearer's reaction to the statement that is the *relevant* fact sought to be proved--*not* the truth of the matter asserted in the statement." (*Ibid.*) Consequently, the judge pro tem erred in excluding this evidence and denying the plaintiff the benefit of an equitable excuse for his tardy administrative complaint.

Although both parties have addressed the other grounds in the motion for summary judgment that the judge pro tem did not reach (in the event this court desired to consider them), they ask us to remand the matter to the trial court for it to make its initial determination of them. We will accede to their request.

## Disposition

The judgment is reversed and the matter remanded to the trial court with directions to vacate its order granting summary judgment and consider the remaining issues in the motion. The plaintiff shall recover his costs of appeal.

DAVIS, Acting P.J.

We concur:
NICHOLSON, J.
HULL, J.

---

[1] For example, he disputed whether UPRR was previously aware of his medical restriction and whether his inability to move a locomotive was relevant to his job, as he performed the same duties on his return to work.

[2] According to the notice to appear for the conference and the plaintiff's case management statement, the matter was assigned to Department 3 in the trial court without any indication of who would be presiding.

[3] The commissioner purported to refer to minutes reflecting these facts. The record on appeal does not include any such minutes from a May 2005 conference, although we note that the plaintiff's designation of record on appeal does not include any request for such minutes, either.

[4] In this motion, the plaintiff's attorney seems to indicate that there was indeed a May 9, 2005, appearance at which counsel objected to a November 2005 trial date.

[5] The plaintiff has not asserted that the continuing violation doctrine has any application to his claim, as the decision to place him on medical leave was sufficiently final as of July 2, 2002. (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823-824.)

[6] Except where specific provisions of California statutory law are to the contrary, the decisions of federal courts involving the federal antidiscrimination statutes have persuasive value. (*Romano*, *supra*, 14 Cal.4th at p. 498.) Neither the federal nor state statutes specify that subject matter jurisdiction depends on the *timely* filing of an administrative complaint. (*Zipes*, *supra*, 455 U.S. at pp. 393-394; *Keiffer*, *supra*, 65 Cal.App.4th at p. 899.)

[7] We accord respect to the decisions of an administrative agency on matters within its expertise, though ultimately we decide de novo the interpretation of its governing statutes. (*Gonzales v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 843, 849.)

[8] As it is sufficient to rely on an equitable exception for the untimely administrative complaint in the present case, we do not need to invoke the holding of *Casavantes v. California State University, Sacramento* (9th Cir. 1984) 732 F.2d 1441, 1443, which relied on the timeliness of an *intake questionnaire*. This holding is the subject of dispute in federal courts (e.g., *Pijnenburg v. West Georgia Health System, Inc.* (11th Cir. 2001) 255 F.3d 1304, 1306-1307), largely because it is premised on an interpretation of agency regulations in derogation of the unambiguous statutory language. In any event, the DFEH has not promulgated analogous regulations and California law is to the contrary. (*Cole v. Antelope Valley Union High School Dist.* (1996) 47 Cal.App.4th 1505, 1515 [facts contained in materials other than verified complaint cannot be basis for liability of party].)

Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142
415) 336-3547

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JANE ROCIO EVANS

Plaintiff, CASE NO. 08 CV 0315

vs.

LOGAN HEIGHTS FAMILY HEALTH CENTER,

Defendant

**EXHIBIT 15:** Equal Employment Opportunity Commission Intake Questionnaire, 4 pages. No reason given to Plaintiff on the date of her Lockout, November 11, 2002, as to why she was escorted out of the building by Security. Osiris Leon and Esther, co-workers, are witnesses to Plaintiff being escorted by Security and this Lockout. This calling Security and being escorted out of building is intentional racial discrimination authorized by Defendant Supervisor Yvonne Bentle, who was in the building at 2204 National Avenue, San Diego, at the time, at around 4 p.m.-4; 30 p.m. Mexican co-worker Luis had circulated a written petition , and it had been communicated that co-workers at this facility were distressed at seeing Mexican Manager Adela escorted out of building by Security during her last day of work in 2000. Thus Defendant supervisors were aware that this issue of racial discrimination had been raised both verbally and in writing and

that the Mexican clinicians at this facility did not want Security called on them for this purpose. Supervisors proceeded to behave in a racially discriminatory manner in any case, thus making this Intentional racial discrimination. Security was not called on Caucasian Co-worker Ann Leffington on her last day of work. Thus Ms. Leffinton was treated in a

**Preferential** manner than her Mexican co-worker, Plaintiff. In addition, there was no computer in the office where Plaintiff worked and no need whatsoever to call Security. **Plaintiff suffered symptoms of Posttraumatic Stress Disorder**, felt intimidated and distressed over having Security called on her. Plaintiff is claiming that co-workers who witnessed this Security called on Adela and Plaintiff are susceptible to having suffered symptoms of Secondary posttraumatic Stress Disorder for having witnessed this event. Plaintiff has a Marriage, Family Therapist License in order to verify that she has expertise

in making this diagnosis. Plaintiff wrote at least 3 letters to Defendant requesting reason she had been terminated at the time from this company. No response was given by Defendant, either verbally or in writing, for these 3 letters sent. Employment Development Department Benefits were awarded to Plaintiff partly based on fact that Defendant did not give a business reason in writing in October 2002, for Plaintiff's Termination, thus making this a Lockout.

**EXHIBIT 16: Letter** sent to Plaintiff, dated September 12, 2003, sent by Estela Rubalcaba Klink, Executive Director of the Sherman Heights Community Center. Evidence that Plaintiff established positive relationships with this Community Center

while she was employed at Defendant's company. Plaintiff thus assisted in establishing a positive professional reputation and alliance for Defendant's company with this Center. Defendant Supervisors never validated this, even though Plaintiff was on good terms with Rubalcaba beyond her Lockout date, and completed a Day of the Dead altar for grandmothers in October 2003. Plaintiff has a photograph of this altar. Media were there, who interviewed Plaintiff for television. In addition, Plaintiff established positive relationships with Sherman Elementary School staff. Plaintiff volunteered extra time to attend Psychologist Georgia's going away party at Sherman Elementary school on October 10, 2002. Defendant Supervisor Nora Cole also attended this party. Cole did not say a word to Plaintiff during this event, not even to greet her. Plaintiff sat and talked with teachers of this school, continuing to build positive relationships with this community.

**EXHIBIT 17:** Legal document from website of the Board of Behavioral Sciences, verifying that Anke Gleber is a Licensed Marriage, Family therapist, license number: 38404. Her license is CLEAR and thus in good standing, with no actions on it. Ms. Gleber is thus a respectable professional. Her two letters submitted as evidence to this Court, whistleblowing on Defendant, thus have strong validity and credibility. Gleber is part of a whistleblowing set to the unethical conduct by Defendant Supervisor Nora Cole. Cole refused to authorize Gleber coming in for extra days in order to have clinical closure termination with children and families of this company. This verifies that Cole was behaving in a racially discriminatory manner towards Gleber, who was born in Germany and immigrated to the United States as an adult, and is thus under a

Protected status. Defendant also **Retaliated for Gleber whistleblowing to Defendant Human Resources Manger** around this time as regards Defendant Supervisor Kreyling inadequately and incompetently clinically supervising Interns at this company. This Retaliation occurred in part by Defendant Cole not authorizing additional time for clinical closure for Gleber with children and their families. This Retaliation also occurred by intimidation of Kreyling towards Gleber, stating and thus threatening Gleber with statement:" You know, Anke, it is not that easy to fire someone around here." Retaliation also occurred by Cole secretly auditing Gleber by going through her files in one of the elementary schools she was working at. Gleber communicated to Plaintiff that a school staff communicated to her that Cole had been looking through her files at this school when she knew that Gleber was not at this school site. This whistleblowing is stated in Gleber's January 2007 letter, submitted to this Court. Plaintiff whistleblowed to CAMFT in the exhibit submitted to this Court, letter sent to CAMFT on March 2003 and November 2002, stating that Defendant had violated CAMFT regulations of unethical Termination with clients and client abandonment by refusing to authorize termination time or therapy closure time with MEDI-Cal children and their families. A Defendant co-worker is a witness to this violation of CAMFT standards and encouraged Plaintiff to report this violation to CAMFT in the Fall of 2002. CAMFT never disciplined Bentle, who was a member of CAMFT at the time, as was Plaintiff. Bentle **Retaliated** on Plaintiff whistleblowing on CAMFT concerning exploitation of Avalos-Mireles and racially discriminatory auditing by recommending that Plaintiff be Locked out of this company, largely, with reasonable suspicion to state, because she was a member of

CAMFT at the time.

Jane Rocio Evans, MFT

Dated: June 26, 2008

Jane Rocio Evans, MFT

Licensed Marriage, Family Therapist

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a."**

***(PLEASE PRINT)***

**1. Personal Information**

Last Name: Evans, First Name: Jane MI: Rocio

Street or Mailing Address: P.O. Box 424886 Apt Or Unit #: —

City: San Francisco County: CA State: Zip: 94142

Phone Numbers: Home: (415) 336-3547 Work: (—)

Cell: (415) 336-3547 Email Address: rocioevans@yahoo.com

Date of Birth: 5-26-1962 Sex: Male ___ Female ✓ Race: Mexican

National Origin / Ethnicity Mexican American, born in Mexico City. Do You Have a Disability? Yes ☐ No ☑

**Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Herbert Evans Relationship: brother

Address: 3031 Fairmount Blvd. City: Riverside State: CA Zip Code: 92501

Home Phone: (951) 522-0256 Other Phone: ( )

**I believe that I was discriminated against by the following organization(s): (Check those that apply)**

Employer ✓ Union ___ Employment Agency ___ Other (Please Specify) ___

**2. Organization Contact Information**

**Organization #1 Name:** Logan Heights Family Health Center / Counseling Center

**Address:** 1809 National Avenue **County:** San Diego

**City:** San Diego **State:** CA **Zip:** 92113 **Phone :**(619) 234-8171

**Type of Business:** Mental Health Program Job Location if different from Org. Address: 2304 National Ave. San Diego, CA. 92113

**Human Resources Director or Owner Name:** Name unknown **Phone:** (619) 515-2406

**Number of Employees in the Organization at All Locations:** Please Check (✓) One

Less Than 15 ☐ 15 – 100 ☐ 101 – 200 ☐ 201 – 500 ☑ More 500 ☐

**Organization #2 Name:** ___

**Address:** ___ **County:** ___

**City:** ___ **State:** ___ **Zip:** ___ **Phone :**( ) ___

2

Type of Business: Mental Health Program. Job Location if not at Org. Address: 2204 National Ave. San Diego CA. 92113.

Human Resources Director or Owner Name: Name unknown Phone: 619) 234-8171.

**Number Of Employees In The Organization At All Locations**: please check (✓) one

Less Than 15 ☐ 15 – 100 ☐ 101 – 200 ☐ 201 – 500 ☑ More 500 ☐

3. **Your Employment Data** (Complete as many items as you can)

Date Hired: May 27, 2000 Job Title At Hire: Therapist/MFT Intern

Pay Rate When Hired: $18 an Hour Last or Current Pay Rate: $20.60 cents an Hour

Job Title at Time of Alleged Discrimination: MFT Intern/Therapist

Name and Title of Immediate Supervisor: Diane Coring & Yvonne Bentle

**If Applicant, Date You Applied for Job** N/A **Job Title Applied For** N/A

4. **What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you are over the age of 40 and feel you were treated worse than younger employees* ***or*** *you have other evidence of discrimination, you should check* ***(✓) AGE****. If you feel that you were treated worse than those not of your race* ***or*** *you have other evidence of discrimination, you should check* ***(✓) RACE****. If you feel the adverse treatment was due to multiple reasons, such as your sex, religion and national origin, you should check all three. If you complained about discrimination, participated in someone else's complaint or if you filed a charge of discrimination and a negative action was threatened or taken, you should check* ***(✓) RETALIATION****.*

Race ☑ Sex ☐ Age ☐ Disability ☐ National Origin ☐ Color ☐ Religion ☑ Retaliation ☑ Pregnancy ☐

Other reason (basis) for discrimination (Explain).

5. **What happened to you that you believe was discriminatory? Include the date(s) of harm, action(s) and include the name(s) and title(s) of the persons who you believe discriminated against you. (Example: 10/02/06 – Written Warning from Supervisor, Mr. John Soto)**

A) Date: 10/11/2002 Action: Locked out from Place of work. Authorized by Diane Coring and Human Resource Director. No Reason

Name and Title of Person(s) Responsible: Given to me at the time as to why I was escorted out of building by Security

B) Date: June 2002 Action: Letter sent to me by Supervisor stating/threatening Termination unless I got a car. (Supervisor Yvonne Bentle sent letter) (locked out of work)

Name and Title of Person(s) Responsible

Describe any other actions you believe were discriminatory.

During June 2000, I participated in Someone else's Complaint – I signed a Petition for Co-Worker Adela, Coordinator of Mental Health Program. Petition challenged unfair Treatment of Mexican Co-Worker Adela in being unjustly laid off work for illegal Reasons, and also Adela's racially discriminatory Treatment by Supervisors of her being

**(Attach additional pages if needed to complete your response.)** unnecessarily escorted by Security and thus humiliated on her last day of work. ... for ... Adela

6. **What reason(s) were given to you for the acts you consider discriminatory? By whom? Title?**

No reason was given to me, either verbally or in writing by any supervisor or HR Director at Logan Counseling Center. I wrote at least 3 letters requesting reason for Lockout and the letters were never responded to. I was told by EDD personnel that this was the reason my Unemployment claim Benefits went Through

7. **Name and describe others who were in the same situation as you. Explain any similar or different treatment. Who was treated worse, who was treated better, and who was treated the same? Provide race, sex, age, national origin, religion, and/or disability status of comparator if known and if connected with your claim of discrimination. Add additional sheets if needed.**

Catherine Norma Lopez - treated similar. Mexican - See typed letter

| Full Name | Job Title | Description |
|---|---|---|
| 1. Susan Kurtz, | Therapist/MFT Intern, | Caucasian - Treated better - made serious error at work, not locked out. |
| 2. Adela - | Coordinator, | Mexican - treated similar - Security called on her unnecessarily. |
| 3. Luz Maria | — | Given mediocre Job Evaluation - Treated similar - Mexican American, similar Title. |

**Answer questions 8-10 only if you are claiming discrimination based on disability. If not, skip to question 11.**

8. **Please check all that apply:**
   - ☐ Yes, I have an actual disability
   - ☐ I have had an actual disability in the past
   - ☐ No disability but the organization treats me as if I am disabled

9. **If you are alleging discrimination because of your disability, what is the name of your disability? How does your disability affect your daily life or work activities, e.g., what does your disability prevent or limit you from doing, if anything? (Example: lifting, sleeping normally, breathing normally, pulling, walking, climbing, caring for yourself, working, etc.).**

10. **Did you ask your employer for any assistance or change in working condition because of your disability?**
YES ☐ NO ☐

**Did you need this assistance or change in working condition in order to do your job?**
YES ☐ NO ☐

**If "YES", when?** ____________ **To whom did you make the request? Provide full name of person** ____________ **How did you ask (verbally or in writing)?** ____________

**Describe the assistance or change in working condition requested?**

11. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and indicate what they will say. Add additional pages if necessary.

A. NAME / JOB TITLE / ADDRESS & PHONE NUMBER
Anke Gleber, Licensed Psychologist, MFT, 2695 Fordham St. East Palo Alto, CA. 94303 (415) 821-9122.
See letter from Ms. Gleber enclosed. She is a major witness.

B. NAME / JOB TITLE / ADDRESS & PHONE NUMBER
Norma Lopez, Administrative Assistant, Mexican (619) 934-1203 and (619) 428-7561.
She suffered Discrimination in the form of an illegal termination for whistleblowing regarding Mexican school children.

C. NAME / JOB TITLE / ADDRESS & PHONE NUMBER
Luis Morales, Mental Health Therapist. — phone number unknown.
→ Mr. Morales witnessed Coordinator Adela being Harassed Racially at Logan Counseling Center by being escorted by security unnecessarily on her last day of work

12. Have you filed a charge previously in this matter with EEOC or another agency? YES ☑ NO ☐

13. If you have filed a complaint with another agency, provide name of agency and date of filing:
I first filed a charge with San Diego EEOC about Dec 2002. Please check your records/file, as I submitted important evidence at the time concerning case

14. Have you sought help about this situation from a union, an attorney, or any other source?
YES ☑ NO ☐ - If yes, from whom and when? Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Again, from San Diego EEOC. I submitted card from Supervisor Diane Coking which is evidence of racial Discrimination. I also wrote to San Diego CAMFT and the Board of Behavioral Sciences in 2002-2003 but they refused to assist me.

Jane Rosa Nlora, MFT

Signature / Today's Date

**If you have not heard from an EEOC office within 30 days of mailing this form, please call toll-free number shown on the letter accompanying this form. Provide the tracking number on the attached cover letter. Please make a copy of this form for your records before mailing.**

**PRIVACY ACT STATEMENT:** This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Intake Questionnaire (10/2006).
2. **AUTHORITY.** 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3. **PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).
4. **ROUTINE USES.** Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counseling as is appropriate. Information provided on this form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. Information may also be disclosed to respondents in connection with litigation.
5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.** The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

SHERMAN HEIGHTS COMMUNITY CENTER

Additional Evidence that I did a good job at Logan Counseling Center. I volunteered to create a day of the Dead Altar for my Grandmother Adela and other Mexican Grandmothers at Sherman Community Center. I established a good relationship with Ms. Rubalcaba before I was Locked out of Logan Counseling Center in order to create this altar. — Jane Rocio Evans

September 12, 2003

Rocio Evans
P.O. Box 120457
San Diego, CA 92112-0457

Dear Rocio Evans:

In a difficult time for nonprofit organizations, your generous donation of **$10.00** came as a timely gift. Which will contribute to the sustainability of our programs.

Your donation allows us to continue to offer important services and programs to residents and families of Sherman Heights, Golden Hill, Grant Hill, Center City East and Stockton. Through these programs the residents from these neighborhoods are provided with opportunities to learn new skills and contribute to their community, thus increasing their role as an active member of the community. This simultaneously fosters tremendous personal and communal growth.

Once again, your gift is greatly appreciated. If you are ever in the area we would welcome the opportunity to give you a tour of our center and introduce you to the members of this very special community.

Gratefully yours,

Estela

Estela Rubalcaba Klink
Executive Director
Sherman Heights Community Center

Rocio* Thank you very much for your thoughtfulness! Also, Merle said you two met and shared what you will do for Dia de los Abuelitas the muertos remembrance. Great! Estela

P.S. I also taught a group for "children who had witnessed domestic violence" at the Sherman Community Center. Please contact Ms. Rubalcaba as a witness to my work regarding this — Jane Rocio

# Search Results for Marriage and Family Therapists (Licensees, Interns)

The information on this page is updated five days a week (Monday - Friday).

**To see all the information for a licensee, click on the highlighted name. This will also include administrative actions if any are present.**

| Name | Type | Number | Status | Address | City | Zip | County | Actions? |
|---|---|---|---|---|---|---|---|---|
| GLEBER ANKE I | IMF | 35315 | CANCELLED | | | | SAN DIEGO | No |
| GLEBER ANKE I | MFC | 38404 | CLEAR | SPECIAL ED RCSD | PALO ALTO | 94303 | SANTA CLARA | No |

Records 1 to 2

First Previous

***Disclaimer***
*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back | Return to Main License Listing

Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142
415) 336-3547

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JANE ROCIO EVANS

Plaintiff, CASE NO 08 CV 0315

vs.

LOGAN HEIGHTS FAMILY HEALTH CENTER

Defendant

**EXHIBIT 18:** Letter mailed to Plaintiff in Fall of 2007, from The Equal Employment Opportunity Commission, stating that the Charge Plaintiff filed on Defendant, EEOC Charge NO: 488-2007-00749," is subject to the following law: "Title VII of the Civil Rights Act of 1964 (Title VII) ", 1 page.

**EXHIBIT 19:** Letter mailed to Plaintiff, dated: January 10, 2008, sent from Rosa Veramontes for Olophius E. Perry, from the Los Angeles District Office of the Equal Employment Opportunity Commission, 2 pages. This letter states that their office has' no records of any efforts that you made in 2002 and 2003 to file an EEOC Charge of Discrimination." Plaintiff consulted with San Francisco EEOC personnel, a Manager, and it was communicated to Plaintiff that the EEOC by law needed to have put in a computer record, which stays on file on the computer when any Plaintiff files a Charge on a Defendant. The San Diego EEOC thus grossly neglected to do their legal duty by not putting in this record in their computer database. Plaintiff is stating, in response to

this letter, that the Los Angeles EEOC office is grossly neglecting to do their legal duty by stating in writing that they do not have the authority to investigate the Los Angles EEOC. Plaintiff will be writing to the Washington EEOC, asking in writing for them to investigate the San Diego EEOC office for their most serious legal violations. Plaintiff presented in person to the San Diego EEOC in December 2002. It was communicated to Plaintiff at this time that she needed to wait for an appointment for one month. Plaintiff submitted a complaint in writing to this office at that time. Plaintiff spent two hours with a Mexican American male San Diego EEOC Intake worker, who communicated to her at the time: "Diane Coming authorized your Termination from this company." This Intake worker read the card sent by Coming communicating to Plaintiff,"I will not give an employment reference to you because you have been hostile to co-workers." Intake worker made a Xerox copy of this card. Intake worker consulted with Supervisor regarding taking case for investigation. This worker communicated to Plaintiff at this time that he could not take this case, "because Susan Kurtz is a licensed therapist and you are an Intern Therapist, so even if Susan was treated better than you and she is Caucasian, she is not in the same job category as you." EEOC worker did not at the time communicate to Plaintiff that Coming's letter was Evidence that Plaintiff had a **Defamation Charge** on Defendant and did not give Plaintiff on attorney referral list. EEOC intake worker telephoned Plaintiff in January 2003 and asked her,' I want your permission to call this company and tell them that you came to the EEOC office but we did not take your case." Plaintiff said no to this request. San Francisco EEOC Manager

asked Plaintiff when she explained this phone call to him, 'Was that a Threat?' as regards San Diego EEOC intake worker's phone call. Plaintiff also sent a letter in writing to Defendant's office in Spring of 2003, communicating to them that she had contacted the EEOC but that they had not taken her case. Defendant is thus aware that Plaintiff contacted the EEOC in 2002 regarding this matter. They are a witness to this. In particular, Plaintiff wrote to Defendant's Human Resources Manager at this time, that EEOC had communicated to her that Coming had Authorized her Termination. HR Director communicated to Plaintiff by phone at this time:" I authorized your Termination and I'm glad I did this.' Plaintiff felt very distressed and hurt over this communication from HR Director, as HR Director had never contacted Plaintiff before this authorization, in order to investigate matter or at the very least get Plaintiff's side of the story. HR Director also never communicated to Plaintiff why she had authorized this termination. HR Director is Caucasian.

**EXHIBIT 20:** Letter dated September 5, 2007, sent by fax and Certified mail to Joyce Cooper, Director of EEOC, San Diego, and Raul Green, 3 pages. This letter communicates in detail the several sets to the racial discrimination that occurred to Plaintiff. Plaintiff names Luis, Adela, Norma Lopez, Anke Gleber, as being treated worse or differentially by Defendant. All of these individuals fall under a protected status. Plaintiff names Caucasian co-worker Anne Leffington as being treated better or Differentially by Defendant.

**EXHIBIT 21: Letter sent via Certified mail by Plaintiff to Raul Green of the San Diego EEOC.** 2 pages. This letter states that Defendant violated their Disciplinary Policy

by not giving Plaintiff a verbal or written warning before Locking Plaintiff out of work. Thus, this violation of the Disciplinary Policy, along with Plaintiff's whistleblowing to Bentle one month before this Lockout occurred makes it a reasonable Hypothesis to state that this not an at-will organization and that Plaintiff thus suffered under a Title VII, as San Diego EEOC diagnosed this case as such in their letter, exhibit 18. This letter explains in more detail the **Medi-Cal fraud committed by Defendant Supervisor Kreyling** and how Gleber showed evidence of this Fraud to Plaintiff and had this evidence in her possession in 2003. Plaintiff also communicated this Fraud to Mental Health Services in San Diego at a meeting with two of these personnel in January 2003. Gleber has the name and phone number of the female Caucasian worker who Interviewed and investigated Plaintiff at this time, Nina P. Nina contacted Gleber and Lopez by phone and interviewed them regarding this matter. She is thus a witness to this. Nina did not inform Plaintiff that this meeting with Plaintiff was for purposes of investigating Plaintiff. Nina suggested that she meet with Plaintiff and an African American investigator at a Starbucks in Horton Plaza. After Plaintiff communicated Medi-cal fraud and CAMFT violations, including that of client abandonment CAMFT violation committed by Bentle, investigators communicated to Plaintiff;' we are going to audit all of your Medi-cal charts." Plaintiff was very distressed over this additional auditing and experienced this as a Threat from these investigators.

**EXHIBIT 22: Fax sent by Plaintiff to Raul Green, dated: September 22, 2007, 2 pages.** Plaintiff asked for a serious investigation from EEOC at this time.

**EXHIBIT 23:** Letter mailed by Plaintiff, mailed on May 6, 2008, to Judge Dana M. Sabraw, 2 pages.

**EXHIBIT 24:** copies of certified mail receipts and tracking Confirmation to the United States Postal Website, which verify that letters were sent and received by Perry, Cooper and Honorable Judge Sabraw. 2 pages.

Dated: June 30, 2008

Jane Rocio Evans, MFT

Jane Rocio Evans

Licensed Marriage, Family Therapist

# U.S. Equal Employment Opportunity Commission
## San Diego Local Office

401 B Street
Suite 510
San Diego, CA 92101
(619) 557-7249
TTY (619) 557-5748
FAX (619) 557-7274

Respondent: LOGAN HEIGHTS FAMILY HEALTH CENTER
EEOC Charge No.: 488-2007-00749
FEPA Charge No.:

Jane R. Evans
P. O. Box 424886
San Francisco, CA 94142

Dear Ms. Evans:

This is with reference to your recent inquiry (an office visit, phone call, or correspondence) in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to one or more of the following laws:

[ X ] Title VII of the Civil Rights Act of 1964 (Title VII)

[ ] The Age Discrimination in Employment Act (ADEA)

[ ] The Americans with Disabilities Act (ADA)

[ ] The Equal Pay Act (EPA)

The attached EEOC Form 5, Charge of Discrimination, was drafted as a result of the information provided. To enable proper handling of this action by the Commission you should:

(1) Review the enclosed charge form and make corrections.

(2) Sign and date the charge in the bottom left hand block where I have made an "X". The date of signature on the charge will not affect the jurisdiction date established in any original written complaint previously given to EEOC.

(3) Return the signed charge to this office in the enclosed postage paid envelope.

Since charges should be processed within the time limits imposed by law, please complete these steps as soon as possible. Please call me at the number listed below if you have any questions. If you have to call long distance, please call collect.

[ ] Please be aware that the EEOC will send a copy of the charge to the agency listed below as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Diego Local Office**

401 B Street, Suite 510
San Diego, CA 92101
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
San Diego Status Line: (866) 408-8075 S.F.
San Diego Direct Dial: (619) 557-7249
TTY (619) 557-5748
FAX (619) 557-7274

January 10, 2008

Jane Rocio Evans
P.O Box 424886
San Diego, CA 94142

Dear Ms. Evans:

This letter is in response to your letter dated December 28, 2007 concerning your charge of discrimination against Logan Heights Family Health Center which you filed with the San Diego Local Office of the EEOC. In your letter you ask the EEOC to re-open the investigation of your charge of discrimination, EEOC Charge No. 488-2007-00749, which you filed on October 10, 2007.

EEOC records show that on October 10, 2007 you filed the above-referenced EEOC charge of discrimination alleging that on or about October 11, 2002 you were escorted off the premises and "locked out" of your job at the Logan Heights Family Health Center for, among other things, protesting unfair treatment. You further allege that you were subjected to additional retaliation, the most recent which occurred in 2003, when you were investigated by San Diego Mental Health for alleged fraud. You indicate that you believe you were subjected to this treatment because of your national origin, Mexican and in retaliation for your opposition to discrimination.

Our records also show that on September 27, 2007 you provided information to the San Diego Local Office which was included in your file, in which you identified specific actions taken against you and some of your co-workers by the Logan Heights Family Health Center which you believe are discriminatory. You also identified witnesses and other possible victims to these actions.

You acknowledge that the alleged acts of discrimination occurred in 2002 and in 2003, but claim that the statute of limitations should not apply to you because of the serious nature of your claims and that you attempted to file your claims in a timely manner.

We have no record of any efforts that you may have made in 2002 or 2003 to file an EEOC charge of discrimination. We are unable to verify that you attempted to file a charge with EEOC in December of 2002 because paperwork for charge inquiries that do not become charges is only retained for a period of 90 days. Even so, the EEOC cannot proceed with an investigation unless it has a charge that was fully-filed and served on the employer. We have no record that you ever filed a charge except for the above-referenced charge, which you filed on October 10, 2007.

The EEOC is only authorized by statute to investigate and attempt to conciliate charges alleging discrimination as long as they are filed within 300 days of the alleged discriminatory act. The above-referenced charge was not filed within the time limit required by law; therefore we have no authority to investigate. Please note that the 300-day statute of limitations cannot be extended by the EEOC. The final determination letter you received explained your right to pursue the matter in court within 90 days of your receipt of the dismissal notice. If you do not file a lawsuit within the statutory 90-day period, your right to sue in the matter will expire and cannot be restored by the EEOC.

I hope this information is helpful to you and regret there is nothing further we can do to assist you.

Sincerely,

Rosa Viramontes for

Olophius E. Perry, District Director
Los Angeles District Office

September 5, 2007

Equal Employment Opportunity Commission,

Attn: Joyce Cooper, Director and Raul Green
Wells Fargo Building
401 B Street, Suite 510
San Diego, CA. 92101
EEOC Charge Number: 488-2007-00749

Letter sent by fax and Certified mail on September 5, 2007

I appreciate you sending me this charge. I apologize for not responding sooner.

I greatly appreciate the first paragraph of the Charge, however, I wish to make the correction that I signed this petition, along with Co-worker Luis Morales in 2002. Luis Morales was also Retaliated against for circulating this Petition and requesting an investigation from this Company. He was coerced into taking on additional several sites or schools for him to go to do therapy, when this had not been part of his original agreement with Logan Heights Family Counseling Center. This is according to witness Eliza Mendoza, a Latina Intern therapist at this same Company. I saw him crying at around this time at a staff meeting. He resigned at around the same time I was locked out of this company. My understanding is that he was being racially harassed and was pushed out of this organization by Supervisors there. All the Supervisors, Nora, Diane Coming and Yvonne Bentle, were Caucasian. Luis is Latino.

Please seriously investigate the events surrounding Adela's coerced layoff, which to my understanding is actually a Termination. Diane Coming stated at the time that there was another site or branch of this company to transfer Adela to, but that the Company was not doing this. Please investigate whether Ms. Coming advocated in any manner for Adela to be transferred and what the results of the investigation from this Company were regarding this matter.

Also, I am requesting and insisting that you add to this Charge: The Lockout was Retaliation from Supervisor Yvonne Bentle and Diane Coming for my calling CAMFT, California Association of Marriage, Family Therapists. I inquired with their legal Section or attorneys regarding why these Supervisors were ordering Latina Intern Therapist Genoveva Avalos-Mireles to supervise the EPSDT program's chart work of Intern Therapists.

Ms. Bentle ordered Genoveva to do Ms. Bentle's Supervisory work by having Genoveva check/evaluate all of the EPSDT Intern therapist's progress notes and charts. I communicated to Ms. Bentle that I had called CAMFT to check on the legality of this a few weeks before I was Locked out of this company. CAMFT records should exist for this call.

Jane Rocio Evans, MFT

Page 2, September 5, 2007 letter to Joyce cooper and Raul Green, San Diego Equal Employment Opportunity Commission
Charge Number: 488-2007-00749

I am requesting and insisting that this be also put on the Charge: Additional Retaliation occurred in Winter 2003 by these Supervisors calling for an investigation of me by San Diego Mental Health personnel. These personnel investigated me for Fraud and communicated to me that my"charts from this company were going to be throughly audited." according to their words. This occurred a few months after I complained in writing about illegal and unethical conduct of these Supervisors, in particular of Yvonne Bentle and Diane Coming, to the Board of Behavioral Sciences and to CAMFT. These investigators wanted to meet at Starbucks and did not give the reason for this meeting before we met. I only later realized that I was being investigated.

Also, I am requesting and insisting that this be put on Charge: Retaliation in the form of the Human Resources Director, who is Caucasian, from this Company, Blacklisting, defaming me and racially harassing me by giving a negative reference to the Director of the San Ysidro Mental Health Center. This occurred around March 2003. Retaliation for reporting Supervisors to Board of Behavioral Sciences and CAMFT. Of course I did not get this job, after I had interviewed quite well and had been promised this job, after this Director said she would check my references from Logan Heights Family Counseling Center.

I am requesting and insisting that this also be put on Charge: retaliation by Diane Coming, evidence, in the form of a card she sent by mail, which witness Anke Gleber saw. I submitted a copy of this card to your EEOC Office in the fall of 2002. This Retaliation was Ms. Coming refusing to give me a professional reference, her business reason being:"because you have been hostile to co-workers.' Ms. Coming put this in writing. I am naming this as also racial harassment on her part, as a professional reference was given to Anne Leffington, a Caucasian Intern Therapist, with the same title, same job duties. Co-worker Maggie, a Latina Intern Therapist, heard about this Retaliation from Ms. Coming at around the time it occurred.

Also, I am requesting and insisting that this be put on Charge: further Retaliation form Ms. Bentle: letter she gave me around June 2002, in which she told me"I had the option of going to another program besides hers if I wanted to."I am naming this as r hostile and racial harassment, as she did not give this letter to Caucasian Intern Therapists Sue Kurtz and Anne Leffington, both of whom were in the same program as me at the time and had the same Title and Job duties at the time.

I am requesting and insisting that this be put on Charge: Additional Retaliation from Supervisors Coming, Bentle and Nora, in the form of a Meeting where I was harassed by these 3 Supervisors, who all met at once with me to investigate me, about a month before I was Locked out in October 2002. Eliza Mendoza is a witness to this. She later told me" I thought this was your firing meeting. Don't tell them anything, don't say anything."Ms. Mendoza is a Latina Intern therapist at this Company.

. I was never given an answer for this.

Jane Rocio Evans, MFT

Page 3, September 5, 2007 letter to Joyce Cooper and Raul Green, EEOC, San Diego, Charge Number: 488-2007-00749

Lastly, I am requesting and insisting that this be put on Charge: that Norma Lopez is a set to this Discrimination. She is Latina and she was Terminated for whistle blowing on Supervisor Eleanor Kreyling, who is Caucasian. Ms. Lopez whitleblowed that Ms. Kreyling was illegally forging the signatures of Latino immigrant monolingual Spanish speaking parents on Medi-Cal forms, specifically Consent for minor children to enter therapy treatment forms. Ms. Gleber kept copies of these documents and medi-cal fraud from Ms. Kreyling. Ms. Lopez called the parents to tell them about this and was shortly Terminated. This is also racial harassment and discrimination.

Thus to my understanding, the discrimination sets are: Luis Morales, Adela, Norma Lopez, Maggie- who was paid only $16 an hour when Ms. Kurtz and Ms. Leffington were paid more for the same job title, job duties. Anke Gleber-she was threatened unnecessarily with Termination by Ms. Kreyling. Ms. Gleber is German American. She is an immigrant from Germany. She had the same job title and job duties as me while at this Company.

Again, please do not hesitate to contact me if you have any questions. I can be reached at: P.O. Box 424886, San Francisco, CA. 94142. 415) 336-3547. I'd be more than happy to sign this Charge when adjustments are made.

Respectfully,

Jane Rocio Evans, MFT

Jane Rocio Evans, MFT

September 27, 2007 — Letter sent via Certified mail, on 10-2-07.

To Equal Employment Opportunity Commission,
401 B Street, Suite 510
San Diego, CA 92101
Charge No: 488-2007-00749
Attn; Raul G. Green, CRTIU Supervisor

I received your letter and the copy of the charge of discrimination for me to sign. Thank you for your extra efforts with this and your patience. I am pleased thus far with your work on this. However, I am faxing this letter to you, as well as a Xerox copy of this charge, in order to request the final adjustments before I sign this charge.

Adjustments: please type in my middle name, Rocio on the name portion of the charge.

Please correct that the earliest date that the discrimination took place was **around September 2001,not October 11, 2002**. Around 2001 colleague Sue Kurtz, MFT Intern, slandered my professional reputation and was hostile to me by stating to Supervisor Diane Coming that I had 'taken Sherman school keys from her and left the play therapy room at Sherman elementary school locked on purpose so that she couldn't get into it to work." Ms. Coming never adequately investigated this civil rights violation on the part of Ms. Kurtz towards me. I am requesting and insisting that this slander be added to the charge.

Again, please correct the date that I participated in someone's complaint by signing a petition in June 2002. I signed Luis Morales petition in **June 2000**. Of course accuracy on this date is important.

Please correct typo on second page of charge regarding Norma Lopez. 'Ms. Kreyling was illegally 'foregoing,' needs to be 'forging,' instead. Please add that Ms. Kreyling was thus committing medi-cal Fraud and that there is another witness to this besides Ms. Lopez. (This witness of course is Ms. Anka Gleber, but please do not put name of witness on charge, for purposes of a fair investigation).

I am requesting and insisting that these additional sets be added to the charge as well: Luis Morales, Latino, was racially harassed by program Coordinator Nora and Supervisor Diane Coming, who are both Caucasian, by being pushed and coerced into adding several school sites to his work caseload, illegally, as this was not the agreement he had entered into when he was first hired by Logan Counseling Center. He was driven to tears by this and felt he was thus forced to resign from Logan Counseling Center. He cried during a staff meeting. Please add that there are witnesses to this. (The witnesses are co-worker Eliza Mendoza, but my recommendation is to please do not put this on the charge, for purposes of a fair investigation.)

I am requesting and insisting that you please add to the set that Adela was unnecessarily escorted off the premises by Security on her last day of work, and that this was distressing to her co-workers, as she is a Manager. Supervisor Diane Coming authorized her being escorted by Security.

I am requesting and insisting that it be added to the charge that a Security officer also unnecessarily escorted me off the premises, after Luis Morales had complained in writing about this civil rights violation of Latina co-worker Adela being escorted by Security, to Supervisors Diane Coming and Nora.

Jane Rocio Evans, MFT

Sept 27, 2007, letter to Raul Green, San Diego EEOC.
Charge #: 488-2007-00749.

I am requesting and insisting that Anka Gleber be added to the set as well. She was discriminated against by Supervisor Kreyling, who is Caucasian, by Ms. Kreyling
Page 2, September 27, 2007 letter to Raul Green, Equal employment Opportunity Commission, San Diego, Charge No: 488-2007-00749

Threatening and intimidating her with Termination of employment. Ms. Gleber was also unnecessarily audited by Supervisor Nora, who audited her charts/files, searching for medi-cal fraud, in order to find evidence to Terminate her with. She found nothing. As Ms. Gleber was also unnecessarily audited, as well as me, both auditing authorized by Supervisor Nora, who is Caucasian, it is important that this be added to the Charge.

I am requesting and insisting that this also be added to the Charge: Ms. Kreyling defamed and slandered my professional reputation to Latina Supervisor Evelina Jaimez by telling her that 'Ms. Evans is a Troublemaker." Please investigate this comment by contacting Ms. Jaimez.

I am requesting and insisting that this be added to Charge: Ms. Coming, Ms. Bentle and Nora violated Logan's disciplinary policy by authorizing my Termination and Lockout from Logan when I did not have even a verbal warning on my employment performance record. Ms. Bentle did not investigate, using the proper legal channels and process as regards the investigation of a civil rights violation, that co-worker Ann Leffington, who is Caucasian, intentionally slandered my professional reputation by stating that I had hindered her from completing a Play Therapy Presentation. A meeting did not take place with Ms. Bentle regarding this. Ms. Leffinton refused a meeting with me to resolve this slander. I initiated this meeting, for purposes of conflict resolution and better working relations with Ms. Leffington. Please put in charge that there are witnesses for this. (Co-workers at the presentation, including Genoveva and Osiris Leon, who witnessed this presentation. Please contact these co-workers as witnesses during your investigation. Also, please contact Gary Landreth, Play Therapist at the University of Texas Play Therapy program, as he is an important witness for this. I communicated to him what had happened during this Presentation with Ms. Leffington at the time this was occurring. Mr. Landreth is Ms. Leffinton's mentor.

Please contact me by phone and please leave a good time to reach you if you have any further questions, so that I may sign this Charge soon. My phone is: 415) 336-3547.

Respectfully,

Jane Rocio Evans, MFT

Ms. Jane Rocio Evans,
Licensed Marriage, Family Therapist
P.O. Box 424886,
San Francisco, CA 94142

Letter sent via Certified mail on 10-2-07

P.S. Please put on charge that Ms. Leffington was treated better than me by supervisors giving her an employment refrence even though she was hostile to me.
Also, Nora was treated better than Adela — these are the acts for preferential or better treatment. — over

170 Otis Street, 1st Floor
San Francisco, CA 94103
Phone (415) 557-5636
Fax (415) 557-5640

**Employment Information Center**

Letter sent via Certified mail on 10-2-07

# Fax

To: Linda Walden & Paul G. Gran

From: Jane Rocio Evans, MFT

Fax: 619) 557-7274

Pages: 4

Phone: 619) 557-7249

Date: 9-27-07

Re: EEOC Charge

CC:

☐ Urgent ☑ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

• Comments:

thank you for your time and patience. Please contact these significant additional witnesses during your EEOC Investigation: Luz Maria, co-worker, witness to card from Ms. Coming in which supervisor refused to give Job reference. witness to letter from Ms. Battle in June 2002, intimidating or pushing me to "a go to another program if I wanted to." Anke Gleber: witness to card from Ms. Coming refusing to give job reference. Susan Creel - co-worker, witness that I did a good job as a therapist at the Logan Counseling Center. Esther, co-worker: witness to security being called on me. P.S. Nora and [illegible] Dalia were exactly the same:

10-2-07

To Raul G. Green,

— Please contact Madga Hodges, Latina Case Manager, as an additional witness. She resigned from her position and communicated to me on the day she left, "I feel abandoned by Diane (Coring)." Please ask Ms. Hodges what my work was like.

— On the days Adela and I were terminated, the Human Resources Director was not on site at Logan Counseling Center. Ms. Coring stated that the HR Director usually present at the Center on Fridays for this. Nora was also not on site on the day I was terminated/Locked out.

Osiris and I stood outside the door of Diane Coring's office for a half an hour, knocking, and Ms. Coring would not open the door on the day of my termination, 10-11-02, around 4 p.m.

— Jane Rosario Swane, MFT

May 6, 2008

Letter sent via Certified mail, return receipt requested to Judge Dana M. Sabraw

Regarding: Jane Rocio Evans vs. Logan Heights Family Counseling center
Case Number: 3:08-cv-315

To Honorable Judge Sabraw,

I am currently respectfully requesting an extra week as of this date for me to submit the Exhibits I need to submit in this case with the proper format. I am resubmitting with this letter a copy of the Letter to Sue Logan heights Family Counseling Center that I received from the San Diego EEOC dated November 23, 2007. I double checked my records and have found that I did submit this letter to sue with the initial paperwork submitted to the Clerk's office. I also telephoned the Clerk's office and was informed that my letter to sue Logan heights Family Counseling Center was on file with them. Since the Charges are very strong and there are several racially discriminatory sets to this case, including Manager Adela, Marriage, family Therapist Intern Luis Morales, MFT Intern Genoveva Avalos-Mireles, Norma Lopez and Anka Gleber, P.h. D., this is a particularly strong case and definitely has merit. Ms. Lopez in particular was Terminated for Whistle blowing on Supervisors who were racially discriminating to parents and their children in the Barrio. These Supervisors were also committing Fraud. Since this case involves criminal activity on the part of these Supervisors, which a witness has come forward with, Ms. Gleber, I am respectfully requesting that an attorney be appointed for me in this matter.

I am respectfully requesting that the financial circumstances involved in this matter be taken into consideration. I have faith that this Judge will have the fairness to take these circumstances into account. I have suffered serious hardship in terms of my unemployment. I therefore could not afford to pay the Consultation fee required to even consult with an attorney, and that is why these efforts were not made, not out of lack of effort or diligence on my part. As the 3 letters I will be submitting as exhibits that document my correspondence with the Los Angeles and San Diego EEOC show, I have been very diligent in pursuing the matter of advocating for these children..

I apologize for not corresponding with you earlier. I have been suffering much economic hardship recently in terms of needing to have friends take me in for two weeks and therefore needed to attend to these urgent matters first. The situation is now stabilizing and I can now attend to this. I cannot be faulted for focusing on surviving.

I also wish to state that there was an improper format, due to my lack of experience representing myself in such a matter, as well as my not been able to afford an attorney with this case. I am respectfully requesting also that you please take into consideration that I am doing this from San Francisco, therefore some confusion existed because of this. I was not aware of what website to go on to learn the Proper format. Thus, this was not due to sloppiness or carelessness on my part, it was due rather to lack of knowledge about how to correctly do the Proper Format or where to go to learn it. I also cannot afford to own a computer at this time and this has made things more difficult.

Page 2, Letter sent via Certified mail, return receipt requested on May 6, 2008.
Attention: Judge Sabraw, Case Number: 3:08-cv-315

However, my conviction in assisting these Barrio Children is so strong that I am willing to learn this format and I am more than willing to proceed with this matter.

I am respectfully requesting that the letter from witness Anka Gleber be accepted when I submit this in the Proper Format. Ms. Gleber is a respected Psychologist and her white blowing testimony in this letter is highly intelligent, perceptive and very valuable evidence in this case. It is crucial evidence to this case and Ms. Gleber put much time and effort in writing this letter.

I am respectfully requesting that I be contacted in writing in terms of the decision made regarding my requesting for the Judgment to be vacated regarding my request for a Court appointed attorney.

I am also requesting a response in writing that my letter to sue Logan Heights Family Counseling Center has been found and acknowledge by this Judge. I am submitting an additional copy of this Letter to Sue with this letter, along with the Charge, all 3 pages which were originally submitted in a timely manner to the Clerk's Office in San Diego. I have the stapled copies to verify this.

Respectfully,

Jane Rocio Evans, MFT

Jane Rocio Evans,
Licensed Marriage, Family Therapist
P.O. Box 424886
San Francisco, CA 94142

This page sent via Certified mail to Olophius E. Perry L.A. EEOC on 12-28-07

Charge No: 488200700749

Xerox copy kept for my records.

Jane Rocio Wong, MFT

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

LOS ANGELES CA 90012

| | | |
|---|---|---|
| Postage | $ | $1.31 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

0003

Postmark Here

SAN FRANCISCO CA FOX PLAZA OCT 26 2007 USPS 10/26/2007

Sent To: Olophius Perry, District Director
Street, Apt. No.; or PO Box No.: Equal Employment Opportunity Comission
City, State, ZIP+4: 255 East Temple St. 4th Floor, Los Angeles 90012

PS Form 3800, June 2002 See Reverse for Instructions

7005 0390 0003 6182 7562

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

SAN DIEGO CA 92101

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | $2.33 |
| Return Receipt Fee (Endorsement Required) | | $2.65 |
| Restricted Delivery Fee (Endorsement Required) | | $2.15 |
| Total Postage & Fees | $ | $0.00 |

Postmark Here

SUTTER ST. STATION AUG 17 2007 USPS

EEOC

$7.13 08/17/2007

Sent To: Joyce Cooper, Director, San Diego
Street, Apt. No.; or PO Box No.: Wells Fargo Building, 401 B
City, State, ZIP+4: St. Suite 510, San Diego, CA. 92101

PS Form 3800, August 2006 See Reverse for Instructions

7007 1490 0002 2516 6343

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

SAN DIEGO CA 92101

| | | |
|---|---|---|
| Postage | $ | $1.31 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

0003

Postmark Here

SAN FRANCISCO CA FOX PLAZA OCT 26 2007 USPS 10/26/2007

Sent To: Joyce Cooper, Director, Equal
Street, Apt. No.; or PO Box No.: Employment Opportunity Comission
City, State, ZIP+4: 401 B St. Suite 510, San Diego, CA. 92101

PS Form 3800, June 2002 See Reverse for Instructions

7005 0390 0003 6182 7555

UNITED STATES POSTAL SERVICE®

Home | Help

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: **7008 0150 0002 5426 6899**
Status: **Delivered**

Your item was delivered at 1:31 PM on May 8, 2008 in SAN DIEGO, CA 92101.

*Additional Details >* *Return to USPS.com Home >*

Track & Confirm
Enter Label/Receipt Number.

### Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. *Go >*

Site Map | Contact Us | Forms | Gov't Services | Jobs | Privacy Policy | Terms of Use | National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved. No FEAR Act EEO Data FOIA

Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JANE ROCIO EVANS

Plaintiff, CASE NO 08 CV 0315

vs.

LOGAN HEIGHTS FAMILY HEALTH CENTER

Defendant

**EXHIBIT 25:** Legal document from the Board of Behavioral Sciences (BBS), 1 page.

Printout of Caucasian Defendant employee Susan Catherine Kurtz, who was treated Differentially or better than Plaintiff by Defendant. Kurtz in this document is an ASW, an

Associate Social Worker, not a Licensed Social Worker. Her Registration for this is in **Delinquent** status, thus she was or may still be, **not in legal compliance with the Board of Behavioral Sciences' regulations.** This shows a lack of ability to assume responsibility on the part of Kurtz. In addition, Defendant's company needs to have employees who are complying with BBS regulations in order to maintain their funding. This is a serious violation. Defendant's supervisor Bentle portrayed Kurtz as a Licensed Professional, thus engaging in the BBS violation of **intentional misrepresentation of Title and corporate unprofessional conduct.** Plaintiff thus unknowingly communicated to the San Diego EEOC in 2002 that Kurtz was a licensed professional. Thus, there would be reasonable cause to investigate how much Kurtz is getting paid in

relation to her Mexican co-workers with the same title and job duties. Years later, Plaintiff did an Internet search of the BBS website, out of curiosity as to which of her co-workers at Defendant's company had become licensed, and thus learned about Kurtz Intern status, the equivalent title that Plaintiff had at the time she was employed at Defendant's company. Plaintiff has submitted a copy of her MFT and MFT Intern Registration from the BBS website to this court as an exhibit to verify this. Plaintiff became Licensed on June 7, 2004. Upon discovery, Plaintiff then filed a second Charge with the San Diego EEOC, in 2007, as this was the businesses reason Plaintiff had been given by San Diego EEOC for not taking her case of racial discrimination in 2002, that Kurtz was a licensed professional, therefore in a separate legal job category than Plaintiff.

**Exhibit 26:** Board of Behavioral Sciences legal document, which verifies that Defendant employee, Genoveva Avalos Mireles, is a registered Associate Social Worker, the exact same title as Kurtz. Avalos-Mireles 's BBS registration is currently not in Delinquent Status. 2 pages.

**Exhibit 27:** Board of Behavioral Sciences Legal Printout that Defendant employee, Osiris Leon, is currently an Intern Marriage, Family therapist. Leon's registration is currently not delinquent and never has been. 3 pages.

**Exhibit 28:** First 2 pages of resume of Plaintiff. Resume shows that Plaintiff is Bilingual/Bicultural in Spanish/English. It also shows that Plaintiff has a Certificate in Expressive Arts therapies. Plaintiff graduated first in her class from John F. Kennedy University in 1999 with this Certificate. Plaintiff also graduated with Distinction in

Women's Studies from San Diego State University. Plaintiff thus has demonstrated strong ability to assume professional responsibility. Plaintiff was a valuable asset to Defendant's organization. Second page shows the many valuable contributions Plaintiff made to Defendant's organization, including giving at least 8 presentations in order to train clinical staff, all given voluntarily, going above and beyond her job duties. Plaintiff thus demonstrated a solid sense of responsibility.

**Exhibit 29:** 10 pages. University of California, San Diego, Extension Studies program, Play Therapy courses. Verfies that Plaintiff was seriously attending training in order to assist children and their families clinically. Plaintiff paid for this training largely out of her own pocket, except for one training which Defendant's company paid for. Defendant supervisors communicated to Plaintiff that Plaintiff was the' lead clinician in EPSDT program, because you go to these trainings at U.C. S. D."

**EXHIBIT 30:** 16 pages. Employment performance evaluations given to Plaintiff by Defendant. Evaluations show that Plaintiff completed about 22 Medi-cal charts, a very large body of work, responsibly. Plaintiff was also the only clinician in EPSDT program who was facilitating treatment groups, one for about 9 months on children who had witnessed domestic violence in the Barrio. Plaintiff also facilitated another clinical treatment group on women who had experienced domestic violence and verbal abuse. This was held in a Latina women's residential treatment facility in the Barrio. Plaintiff established most positive working relationship with this facility and did excellent work in this group. This group was well attended and Defendant received about $15 per signature for each participant of these groups.

Dated: July 1, 2008

Jane Rocio Evans,
Jane Rocio Evans MFT
Licensed Marriage, Family Therapist

# Search Results for Licensees and Registrants

The information on this page is updated five days a week (Monday - Friday).

**To see all the information for a licensee, click on the highlighted name. This will also include administrative actions if any are present.**

| Name | Type | Number | Status | Address | City | Zip | County | Actions? |
|---|---|---|---|---|---|---|---|---|
| KURTZ SUSAN CATHERINE | ASW | 17082 | DELINQUENT | 3849 SHASTA ST #2 | SAN DIEGO | 92109 | SAN DIEGO | No |

Record 1

First Previous

***Disclaimer***

*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back Return to Main License Listing

# Board of Behavioral Sciences

1625 North Market Boulevard, Suite S 200
Sacramento, CA 95834
Main Line Phone Number: (916) 574-7830

## Licensee Information

| | |
|---|---|
| **Licensee Name:** | AVALOS-MIRELES GENOVEVA |
| **License Type:** | REGISTERED ASSOCIATE SOCIAL WORKER |
| **License Number:** | 8791 |
| **License Status:** | CANCELED Definition |
| **Expiration Date:** | November 30, 2003 |
| **Issue Date:** | November 19, 1997 |
| **County:** | SAN DIEGO |
| **Actions:** | No |

## Related Licenses/Registrations/Permits

No records returned

## Public Disclosure

No information available from this agency

**This information is updated Monday through Friday - Last updated: MAR-16-2008**

*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information.*

*Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back

# Board of Behavioral Sciences

1625 North Market Boulevard, Suite S 200
Sacramento, CA 95834
Main Line Phone Number: (916) 574-7830

## Licensee Information

| | |
|---|---|
| **Licensee Name:** | LEON OSIRIS |
| **License Type:** | INTERN - MARRIAGE AND FAMILY THERAPIST |
| **License Number:** | 33076 |
| **License Status:** | CANCELED Definition |
| **Expiration Date:** | April 30, 2004 |
| **Issue Date:** | April 15, 1998 |
| **County:** | SAN DIEGO |
| **Actions:** | No |

## Related Licenses/Registrations/Permits

No records returned

## Public Disclosure

No information available from this agency

**This information is updated Monday through Friday - Last updated: MAR-16-2008**

*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness,*

*timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back

# Search Results for Licensees and Registrants

The information on this page is updated five days a week (Monday - Friday).

**To see all the information for a licensee, click on the highlighted name. This will also include administrative actions if any are present.**

| Name | Type | Number | Status | Address | City | Zip | County | Actions? |
|---|---|---|---|---|---|---|---|---|
| LEON OSIRIS | IMF | 33076 | CANCELLED | | | | SAN DIEGO | No |
| LEON OSIRIS | IMF | 45335 | CLEAR | 3366 6TH AVE #34 | SAN DIEGO | 92103 | SAN DIEGO | No |

Records 1 to 2

First Previous

***Disclaimer***
*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back Return to Main License Listing

**Jane Rocio Evans, MA.**
***Resume***

**Personal**

P.O. Box 424886
San Francisco, CA 94142
Cell phone 415) 336-3547
E-mail: rocioevans@yahoo.com

**Relevant Skills**

Creative thinker, capable of finding innovative angles, perspectives and approaches to issues. Expresses thought provoking ideas beautifully and articulately. Insightful and perceptive, brings qualities of keen awareness and practicality to work. Natural authority, comfortable imitating action and motivating others. Ability to accept responsibility, sensitivity to needs of others.

**Education**

| | |
|---|---|
| November 1995 | Master of Arts, Counseling Psychology<br>Lesley College<br>Cambridge, Massachusetts |
| May 1993 | Bachelor of Arts<br>Major, Women's Studies, Graduated with Distinction<br>Major, Psychology<br>San Diego State University |
| December 1999 | Certificate in Expressive Arts Therapies<br>John F. Kennedy University<br>Completed courses in Sandtray/Sandplay<br>Mask making, Poetry Therapy |
| November 2006 | Completed courses in Play Therapy<br>University of California, San Diego, Extension Studies<br>Play Diagnosis, Toys and their uses<br>Nondirective Play Therapy, Filial Therapy<br>Psychodynamic Play Therapy |

**Foreign Language**

Bilingual/Bicultural in Spanish/English

**Professional Experiences**

May 2000-
October 2002

MFT Intern, Logan Heights Family Counseling Center, Outpatient Clinical Treatment Facility, San Diego
Facilitated therapy for children and adults, Play Therapy, Family Therapy. DSM-IV Diagnosing. Treatment Plan Formulation, completion of Mental Health Assessments. EPSDT charting. Responsible for Medi-Cal Billing for children. Facilitated group for children who had witnessed Domestic Violence. Facilitated 3 Domestic Violence groups for women, including group On "responding with impact to emotional abuse." Developed and coordinated Sand Play therapy program. Trained clinical staff on use of Sandplay Therapy. Established 5 Sandtray/Sandplay collections at Counseling rooms in Elementary schools. Gave clinical consultation to teachers at Elementary schools. Gave 10 Presentations on Play Therapy, Sandplay Therapy and Cultural Transference and Co-Transference.

September 1999-
February 2000

Social Worker, New Alternatives, CATC program, San Diego
Responsible for case management of Emotionally Disturbed Adolescents. Participated in Wrap around program. Worked as part of a multidisciplinary team with teachers, psychiatrists and therapists of clients. Facilitated family therapy in Spanish and English languages. Case presentation, Treatment Plan Formulation. Facilitation of Self-Esteem Expressive Art therapy groups. Gave clinical consultation to teachers of adolescents.

April 1999-
July 1999

Youth and Family Therapist, Daly City Youth Health Center
Facilitated individual and family therapy for adolescents. DSM-IV Diagnosing. Participate in intensive training on Suicide assessment and procedures. Facilitated Sandplay Therapy and Expressive Arts Therapy with adolescents.

UNIVERSITY OF CALIFORNIA, SAN DIEGO UCSD

BERKELEY • DAVIS • IRVINE • LOS ANGELES • RIVERSIDE • SAN DIEGO • SAN FRANCISCO SANTA BARBARA • SANTA CRUZ

UCSD EXTENSION, 0176

9500 GILMAN DRIVE
LA JOLLA, CALIFORNIA 92093-0176

# Specialized Certificate Program
in
# PLAY THERAPY

*Play therapy is a dynamic, interpersonal relationship between a child, primarily, and a therapist trained in play therapy procedures.*

**PLAY THERAPY OPENS THE DOOR** to a child's inner world. When we join the child in this world, we can understand more deeply than otherwise possible and can bestow therapeutic gifts and healing that might otherwise not be received. The field of play therapy is presently ripe with knowledge and techniques to stimulate our imaginations and enhance our clinical skills with children and adults as well.

**PLAY THERAPISTS GUIDE** the play of children who must cope with trauma, losses, disabilities, and deficits. As therapists, we bear witness as they work to overcome their problems in the metaphor of play, acknowledging their struggles, pain, and needs. We help them find adaptive resolutions to their problems, first in the world of play, and gradually in their real lives. Play therapists help children regulate their feelings and exposure rate to frightening events by moving with them in and out of their symbolic play worlds until they can make sense of events in their real lives. When children do not know how to play, we teach them the skills to be able to pretend, to communicate symbolically, and to have reciprocal exchanges with others in play.

**THE CERTIFICATE PROGRAM IS DESIGNED FOR** individuals with a background in child psychopathology, developmental and personality theories, verbal therapy, and basic ethical and legal issues related to the practice of psychotherapy. It provides the clinician with skills and versatility in using an array of play therapy techniques with a wide range of psychological and behavioral problems manifested in children as well as applications of play to treating adults.

**THE PROGRAM IS INTENDED TO BENEFIT** professionals in the fields of
Psychotherapy (psychology, MFCC, LCSW, psychiatry, interns)
Counseling
Social work
Psychiatric nursing
Psychological assessment
Education
School counseling
Family studies
Child development
Recreation therapy
Occupational therapy
Child life specialist
Pediatric nursing



**TO EARN THE CERTIFICATE** you must complete 12 quarter units to total 150 hours of coursework, which meets Extension's unit requirement to earn a certificate, as well as the Association for Play Therapy's requirement for hours of in-class instruction to become a Registered Play Therapist (RPT) or a Registered Play Therapist Supervisor (RPT-S).

**GRADING OPTIONS AVAILABLE** are a letter grade or Pass/No Pass, which you will specify as you enroll for credit in each course. A grade of C- or better or a Pass is required for all courses. Courses may also be taken not for credit, but they will not be counted toward the certificate.

**THE COURSE SUBSTITUTION POLICY** is being revised and will be publicized as soon as it is confirmed.

**TO ENROLL IN THE CERTIFICATE PROGRAM,** submit an application (see catalog) using certificate I.D. "SCPT" and the $35 nonrefundable fee, or call (858) 534-3400 to enroll by phone. You may enroll in the certificate at any time. Your record of courses taken, units, etc. will be checked by the Registrar's office against the program requirements published in the catalog the quarter that you enroll to verify completion before awarding the certificate.. If you wait to enroll, you will be responsible for any changes that occur while you are taking courses.

**THE TOTAL COST** of the certificate is approximately $2,500, including the certificate application fee, and is subject to change. The purchase of textbooks is generally not required.

**TO RECEIVE THE CERTIFICATE** when you have completed all the courses, phone the Student Services Office, (858) 534-3444 or e-mail **unex-certificate@ucsd.edu**. Provide your name, Social Security number, and the name of the certificate to have your record checked and your certificate mailed to you. You will also receive a separate certificate documenting 150 hours of continuing education, which you can present to APT.

**UCSD EXTENSION IS AN APPROVED PROVIDER** of continuing education units to Marriage and Family Therapists (MFT), Licensed Clinical Social Workers (LCSW), registered nurses (BRN), the Association for Play Therapy (see pg. 4), and licensed psychologists (on a course-by-course basis).

**PROGRAM COORDINATOR**
**Ellen Lacter, Ph.D., MFT, RPT-S,** is director of the Center for Play and Art Therapy. She is the president of the California Association for Play Therapy and is well known in the San Diego community for the treatment and evaluation of abused children. Since 1984, she has taught graduate classes in family violence and treatment techniques with children at local universities. She has developed an object relations model for resolution of trauma with abused children using play, art, and other expressive therapies, delineated in a forthcoming

# Specialized Certificate Program in Play Therapy, FY 2002-2003

| | TITLE | Course No. | Units | Hours | Quarter | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Fall | Winter | Spring | Summer |
| **I. Treatment Planning Series** (3 units, 42 hours)This series includes fundamentals of play assessment & therapy | | | | | | | | |
| 1. | Play Diagnosis and Assessment I: Development of Symbolic and Social Play and Assessment of Developmental Disabilitiesand Social Play and Assessment of Development Disabilities | PSY-40143 | 0.5 | 7 | | X '02 | | |
| 2. | Play Diagnosis and Assessment II: Play Assessment of Ego Functions and Object Relations | PSY-40144 | 0.5 | 7 | | X '02 | | |
| 3. | Therapeutic Powers of Play | PSY-40149 | 0.5 | 7 | | X '02 | | |
| 4. | Toys and Their Uses | PSY-40156 | 0.5 | 7 | | | X '02 | |
| 5. | Play, Art, Stories, and Verbal Therapy: Which to Use When, With Whom, and Why | PSY-40157 | 0.5 | 7 | | | X '02 | |
| 6. | Legal and Ethical Issues in Play Therapy and Assessment | PSY-40158 | 0.5 | 7 | | | X '02 | |
| | subtotal | | 3 | 42 | | | | |
| **II. Clinicians Toolbox Series** (3 units, 42 hours) This series includes major play therapy theories & techniques | | | | | | | | |
| 7. | Child-Centered Play Therapy | PSY-40159 | 0.5 | 7 | | | | X '02 |
| 8. | Child Relationship Enhancement Family Therapy (Filial Therapy) | PSY-40160 | 0.5 | 7 | | | | X'02 |
| 9. | Psychoanalytic Play Therapy | PSY-40161 | 0.5 | 7 | | | | X '02 |
| 10. | Structured Play Therapy: Cognitive-Behavioral Play, Pre-set Play, Introduction of Resolutions | PSY-40162 | 0.5 | 7 | X '02 | | | |
| 11. | Gestalt Play Therapy, Role-play, and Psychodrama | PSY-40163 | 0.5 | 7 | X '02 | | | |
| 12. | Sandplay: A Therapeutic Process | PSY-40164 | 0.5 | 7 | X'02 | | X'03**** | |
| | subtotal | | 3 | 42 | | | | |
| **III. Play Therapy with Special Populations** (6 units,** 73 hours***) This series applies play therapy theory and technique to diagnostic groups and special populations | | | | | | | | |
| 13. | Play Therapy, Art Therapy, and Assessment of Abused Children and Adolescents | PSY-40118 | 1.5 | 14 | | X '03 | | X'02/03**** |
| 14. | Play Therapy with Children Affected by Illness, Injury, and Man-made and Natural Disasters | | 1.5 | 14 | | X '03 | | |
| 15. | Play Therapy for Attachment Disorders | PSY-40166 | 0.5 | 6 | | X '03 | | |
| 16. | Uses of Play for Learning Disabilities and Developmental Delay | PSY-40168 | 0.5 | 6 | | | X '03 | |
| 17. | Play Therapy with Attention Deficit and Disruptive Behavior | PSY-40167 | 0.5 | 7 | | | X '03 | |
| 18. | Families Fighting and Changing: Play Therapy with Children of Divorce and Re-marriage | | 0.5 | 6 | | | X'03 | |
| 19. | Play Therapy Across Cultural and Ethnic Groups | PSY-40171 | 0.5 | 6 | | | | X '03 |
| 20. | Family Play Therapy | | 0.5 | 7 | | | | X '03 |
| 21. | Supervision and Teaching of Play Therapy | | 0.5 | 7 | | | | X '03 |
| | subtotal | | 6.5 | 73 | | | | |
| | Total | | 12.5** | 157*** | | | | |
| | **TOTAL REQUIRED TO EARN CERTIFICATE** | | 12 | 150 | | 7 qtrs. WI '02-SU '03 | | |

**an extra .5-unit course is included in the curriculum in case you must miss or would like to skip one.

***The Association for Play Therapy requires 150 hours of coursework as part of their registration requirements. You may miss one .5-unit class and still meet the requirement.

****Also an elective for Expressive Arts Therapy certificate. Offered this quarter to meet scheduling requirements of that certificate.

**UCSD EXTENSION IS APPROVED BY THE APT** to offer continuing education specific to play therapy (provider no. 98-046). All of the certificate classes are individually approved for hours toward the academic instruction requirement, as well as the program as a whole.

**TO BECOME AN RPT OR RPT-S,** candidates must have a master's degree in an appropriate medical or mental health profession, including content areas of child development; theories of personality; principles of psychotherapy; child and adolescent psychopathology; and legal, professional, and ethical issues. Only licensed mental health professionals can obtain the additional designation of supervisor (RPT-S).Details about these requirements and applications for the RPT and RPT-S designations may be obtained from

Association for Play Therapy
2100 N. Winery Ave.
Suite 104
Fresno, CA 93703

Phone (209) 252-2278
Fax (209) 252-2297
Email info@iapt.org

## GENERAL INFORMATION

**To Take Courses,** whether or not you have enrolled in the certificate program, request a copy of UCSD Extension's quarterly catalog by calling (858) 534-0406 or visit our web site at: www.extension.ucsd.edu. If you already have a catalog, see the inside back cover for the enrollment form or phone (858) 534-3400 to enroll by phone, using your MasterCard, Visa, or Discover Card.

### Location, Phone Numbers, Office Hours

*UCSD Campus:* UCSD Extension Complex/9600 N. Torrey Pines Rd./La Jolla. Phone number: (858) 534-3400. Fax number: (858) 534-8527. Regular office hours: Monday-Thursday, 8 a.m.-6:00 p.m.; Friday, 8:00 a.m.-6:00 p.m.; Saturday, 8 a.m.-12 n..

*UCSD North County Center:* Carmel View Office Plaza/First Floor/15373 Innovation Dr./Carmel Mountain Ranch. Phone number: (858) 451-7474. Regular office hours: Monday-Thursday, 7:30 a.m.-10:00 p.m.; Friday, 8 a.m.-6:00 p.m.; Saturday, 8 a.m.-12 n.







**FOR ADDITIONAL INFORMATION, CONTACT THE HUMAN DEVELOPMENT DEPARTMENT, (858) 882-8033.**

UCSD EXTENSION

**Student Services**

*your success starts here!*

University of California, San Diego
9500 Gilman Drive, Dept 0176H
La Jolla, CA 92093-0176
(858) 534-3400

ROCIO EVANS
2309 5TH AVE APT 204
SAN DIEGO, CA 92101

## DUPLICATE GRADE REPORT

| TERM | SECTION ID | COURSE TITLE | UNITS | GRADE |
|---|---|---|---|---|
| WI02 | 33557 | Play Diagnosis & Assessment II | 0.5 | A |

As of 3/14/2002, our records indicate that you have completed the course listed above. If any of the above information is not in agreement with your records, please report the discrepancy to Student Services.

E. Abeyta

Edward L. Abeyta M.Ed.

Registrar

**Grading Options:**

A+,A,A-=Excellent; B+,B,B-=Good; C+,C,C-=Fair; D+,D,D-=Poor; F=Fail; P=Pass(C- or better); NP=No Pass; I=Incomplete; NR=No Record; NS=Grade Not Submitted by Instructor; S=Satisfactory; U=Unsatisfactory; W=Withdraw, NFC=Not For Credit

UCSD EXTENSION

# FINAL GRADE REPORT

University of California, San Diego
9500 Gilman Drive, Dept 0176H
La Jolla, CA 92093-0176

*Academics Records:*
*(858) 534-8061*

NOW YOU CAN ENROLL ON-LINE: www.extension.ucsd.edu

ROCIO EVANS
222 J STREET INN #344
SAN DIEGO, CA 92101

| Quarter | Section ID | Course | Course # | Subject | Units | Grade |
|---|---|---|---|---|---|---|
| FA00 | 026232 | Toys and Their Uses | 40156 | HBS | 1.00 | A |

**Grading Options:**

| | | |
|---|---|---|
| A+,A,A-=Excellent | P=Pass (C- or better) | I=Incomplete |
| B+,B,B-=Good | NP=No Pass | W=Withdraw |
| C+,C,C-=Fair | S=Satisfactory | NFC=Not For Credit |
| D+,D,D-=Poor | U=Unsatisfactory | NR=No Record |
| F=Fail | | NS=Grade Not Submitted by Instructor |

As of 12/12/00, our records indicate that you have completed the course(s) listed above. If of the above information is not in agreement with your records, please report the discrepanc Academic Records Office (858) 534-8061.

UCSD EXTENSION

# RECEIPT / VERIFICATION OF ENROLLMENT

A Division of UCSD Extended Studies & Public Programs
9500 Gilman Drive, Dept 0176H
La Jolla, California 92093-0176

| Section | Course Title | Course # | Subject | Start Date | End Date | Days | Bldg | Room | Begin Time | End Time | Grade Option | Fees Paid * |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 33558 | Therapeutic Powers of Play | 40219 | PSY | 3/2/2002 | 3/2/2002 | | | | | | L | **$112.00** |
| | | | **Meeting Info:** | | | S | NC | 166 | 900 am | 520 pm | | |

*** Dollar amount in the Fees Paid Column reflects amount paid by student**

EVANS, ROCIO
2309 5TH AVE APT 204
SAN DIEGO, CA 92101

UCSD Extension / University of California, San Diego

# Specialized Certificate Program in Play Therapy

| | | | | | | |
|---|---|---|---|---|---|---|
| **Analysis of Certificate Program Status** | | | | | | |
| **As of:** Winter 2002 | | | | | completed by student | |
| | original format | | revised format | | | |
| **Student:** Rocio Evans | units | hours | units | hours | units | hours |
| | to FA '01 | to FA '01 | beg WI '02 | beg WI '02 | | |
| **I. Treatment Planning Series** | | | | | | |
| 1. Play Diagnosis and Assessment I: Development of Symbolic and Social Play and Assessment of Development Disabilities | 1 | 8.3 | 0.5 | 7 | 0.5 | 7 |
| 2. Play Diagnosis and Assessment II: Play Assessment of Ego Functions and Object Relations | 1 | 8.3 | 0.5 | 7 | | |
| 3. Therapeutic Powers of Play | 1 | 8.3 | 0.5 | 7 | 0.5 | 7 |
| 4. Play, Art, Stories, and Verbal Therapy: Which to Use When, With Whom, and Why | 1 | 8.3 | 0.5 | 7 | | |
| 5. Toys and Their Uses | 1 | 8.3 | 0.5 | 7 | 1 | 8.3 |
| 6. Legal and Ethical Issues in Play Therapy and Assessment | 1 | 8.3 | 0.5 | 7 | | |
| subtotal | 6 | 50 | 3 | 42 | 2 | 22.3 |
| **II. Clinicians Toolbox Series** | | | | | | |
| 7. Child-Centered Play Therapy | 1 | 8.3 | 0.5 | 7 | | |
| 8. Child Relationship Enhancement Family Therapy (Filial Therapy) | 1 | 8.3 | 0.5 | 7 | | |
| 9. Psychoanalytic Play Therapy | 1 | 8.3 | 0.5 | 7 | | |
| 10. Structured Play Therapy: Cognitive-Behavioral Play Therapy, Pre-Set Play, and Introduction of Resolutions | 1 | 8.3 | 0.5 | 7 | | |
| 11. Gestalt Play Therapy, Role-play, and Psychodrama | 1 | 8.3 | 0.5 | 7 | 1 | 8.3 |
| 12. Sandplay: A Therapeutic Process | 1 | 8.3 | 0.5 | 7 | | |
| subtotal | 6 | 50 | 3 | 42 | 1 | 8.3 |
| **III. Play Therapy with Special Populations** | | | | | | |
| 13. Play Therapy, Art Therapy, and Assessment of Traumatized Children and Adolescents (replaced by 13a.) | 2 | 16.66 | | | | |
| 13a. Play Therapy, Art Therapy, and Assessment of Abused Children and Adolescents | | | 1.5 | 14 | | |
| 14. Play Therapy with Children Affected by Illness, Injury, and Man-made and Natural Disasters (new) | | | 1.5 | 14 | | |
| 15. Play Therapy for Dissociative Disorders (discontinued) | 0.5 | 4.15 | | | | |
| 16. Play Therapy for Attachment Disorders | 0.5 | 4.15 | 0.5 | 6 | | |
| 17 Play Therapy for Attention Deficit and Disruptive Behavior Disorders in Children | 0.5 | 4.15 | 0.5 | 6 | | |
| 18. Uses of Play for Learning Disabilities and Developmental Delay | 0.5 | 4.15 | 0.5 | 7 | | |
| 19. Play Therapy with Injured and Ill Children (replaced by 19a.) | -0.5 | -4.15 | | | | |
| 19a. Play Therapy with Injured and Ill Children (discontinued) | 1 | 8.3 | | | | |
| 20. Use of Play in Therapy with Families with Young Children (discon't) | -0.5 | -4.15 | | | | |
| 21. Families Fighting and Changing: Play Therapy with Children of Divorce and Re-marriage (new) | | | 0.5 | 6 | | |
| 22. Play Therapy Across Cultural and Ethnic Groups | 0.5 | 4.15 | 0.5 | 6 | | |
| 23. Play Therapy with Adolescents and Adults (discontinued) | 0.5 | 4.15 | | | | |
| 24. Family Play Therapy (new) | | | 0.5 | 7 | | |
| 24. Supervision and Teaching of Play Therapy (new) | | | 0.5 | 7 | | |
| subtotal | 6 | 50 | 6.5 | 73 | 0 | 0 |
| TOTAL | 18 | 150 | 12.5 | 157 | 3 | 31 |
| **TOTAL REQUIRED TO EARN CERTIFICATE** | 18 | 150 | 12 | 150 | 18* | 150 |
| | | revised format: | | 7 qtrs. WI '02--SU '03 | | |
| | | | | 4th cycle begins FA '03 | | |
| | | *based on requirements at time of enrollment in the certificate (FA '00); subject to adjustment given that 150 hrs. of coursework are completed | | | | |

```
SAHMI15   W109          UCSD EXTENDED STUDIES & PUBLIC SERV        03/02/02 11:24 A
UNXKAH                CHRNLIST : CHRONOLOGICAL COURSE LIST         FIRST PAGE

PID: 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      EVANS, ROCIO                            1ST ENR  : FA99
STUDENT LEVEL : EX    Extension                               LAST ENR : WI02
VIEW TRANSFERS:                                               PRIOR REC: N
ATP:     4.00 CMP:     4.00 PSD:     4.00 GPH:     1.00 GPA:   .000

 TERM SUBJ CRSE   SEC   ATP     CL CT DG GRD TRN R T TITLE
Fall 1999         ATP:    2.00  CMP:     2.00  PSD:    2.00   GPA:0.000
 FA99 PSY  40117 001    2.00    EX AC EX P       N     Dnc/MvmntThrpy:PrncplsInt
Fall 2000         ATP:    1.00  CMP:     1.00  PSD:    1.00   GPA:0.000
 FA00 PSY  40156 001    1.00    EX AC EX A       N     Toys and Their Uses ✓
 FA00 SPEC SCPT  001    0.00    EX AC EX         N     SPC PLAY THERAPY
Spring 2001       ATP:    1.00  CMP:     1.00  PSD:    1.00   GPA:0.000
 SP01 PSY  40163 001    1.00    EX AC EX P       N     Gestalt Play Therapy ✓
Winter 2002       ATP:    0.00  CMP:     0.00  PSD:    0.00   GPA:0.000
 WI02 PSY  40218 001    0.50    EX AC EX         N     Play Diagnosis & Assessme ✓

TERM REQUEST:


NEXT SCREEN:                                    RESPONSE:
4-©                1 Sess-1     132.239.30.210                             4/7
```

```
SAHMI15   W109          UCSD EXTENDED STUDIES & PUBLIC SERV        03/02/02 11:24 A
UNXKAH                 CHRNLIST : CHRONOLOGICAL COURSE LIST          LAST PAGE

PID: 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       EVANS, ROCIO                             1ST ENR   : FA99
STUDENT LEVEL : EX     Extension                                LAST ENR  : WI02
VIEW TRANSFERS:                                                 PRIOR REC: N
ATP:     4.00 CMP:     4.00 PSD:     4.00 GPH:     1.00 GPA:   .000

 TERM SUBJ CRSE  SEC  ATP    CL CT DG GRD TRN R T TITLE
 WI02 PSY  40219 001   0.50  EX AC EX          N   Therapeutic Powers of Pla


TERM REQUEST:


NEXT SCREEN:                                 RESPONSE:
4-©                 1 Sess-1    132.239.30.210                              4/7
```

# Search Results for Marriage and Family Therapists (Licensees, Interns)

The information on this page is updated five days a week (Monday - Friday).

**To see all the information for a licensee, click on the highlighted name. This will also include administrative actions if any are present.**

| Name | Type | Number | Status | Address | City | Zip | County | Actions? |
|---|---|---|---|---|---|---|---|---|
| GLEBER ANKE I | IMF | 35315 | CANCELLED | | | | SAN DIEGO | No |
| GLEBER ANKE I | MFC | 38404 | CLEAR | SPECIAL ED RCSD | PALO ALTO | 94303 | SANTA CLARA | No |

Records 1 to 2

First Previous

***Disclaimer***
*All information provided by the Department of Consumer Affairs on this web page, and on its other web pages and internet sites, is made available to provide immediate access for the convenience of interested persons. While the Department believes the information to be reliable, human or mechanical error remains a possibility, as does delay in the posting or updating of information. Therefore, the Department makes no guarantee as to the accuracy, completeness, timeliness, currency, or correct sequencing of the information. Neither the Department, nor any of the sources of the information, shall be responsible for any errors or omissions, or for the use or results obtained from the use of this information. Other specific cautionary notices may be included on other web pages maintained by the Department. All access to and use of this web page and any other web page or internet site of the Department is governed by the Disclaimers and Conditions for Access and Use as set forth at California Department of Consumer Affairs' Disclaimer Information and Use Information.*

Back | Return to Main License Listing

# LOGAN HEIGHTS FAMILY HEALTH CENTER
## PERFORMANCE REVIEW

DATE 9/1/?

NAME Jane Rocio Evans DEPT. Mental Health CURRENT RATE 35,320.16

TITLE Counselor MFT Intern HIRE DATE 5/30/07 GRADE STEP

(CHECK ONE)

| | | | | | |
|---|---|---|---|---|---|
| V | Orientation Review | | Performance Review | | Promotion |

### WORK CHARACTERISTICS
Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Report to work regularly on time? | | | 3 | |
| Observe lunch and rest period time limits? | | | 3 | |
| Work without lowering the productivity of others? | | | 3 | |
| Willingly accept new methods or ideas? | | | 3 | |
| Put forth an extra effort when needed? | | | | 4 |
| Seek more work when the current job is completed? | | | 3 | |
| Use materials, equipment, and other LHFHC resources wisely? | | | 3 | |
| Interact with others in an effective manner? | | | 3 | |
| Display the capability of learning rapidly? | | | 3 | |
| Maintain orderly work habits and an orderly work area? | | | 3 | |
| Take on additional responsibility without being urged to do so? | | | 3 | |
| Show enthusiasm and support for company objectives in action? | | | 3 | |

Section Average Score: 3.08

Comments:

### JOB KNOWLEDGE
Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Apply knowledge necessary to achieve expected job results? | | | | 4 |
| Have sufficient knowledge to conduct all phases of his/her job? | | | 3 | ~~4~~ |
| Have sufficient depth and breadth of experience to perform assigned tasks? | | | 3.5 | |
| Keep up to date in skills and knowledge required? | | | 3 | |

Section Average Score: 3.37

Comments:

# LOGAN HEIGHTS FAMILY HEALTH CENTER

## PERFORMANCE REVIEW WORKSHEET
***EXEMPT EMPLOYEES***

Date May 10

Employee Name JANE Rocio Evans

RATING SCALE:

| | | |
|---|---|---|
| 1 | Unsatisfactory | (must improve) |
| 2 | Partially meets expectations | (should improve) |
| 3 | Competent | (satisfactory) |
| 4 | Exceeds expectations | (quite frequently) |

Note: use whole numbers only for individual performance factors

PERFORMANCE RATING SUMMARY:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. Work Characteristics | 43 /12 | = 3.58 | X | .15 | ~~.537~~ .54 | |
| 2. Job Knowledge | 13.5/ 4 | 3.37 = 3.37 | X | .15 | ~~.505~~ .51 | |
| 3. Job Duties | 43 / 12 | = 3.58 | X | .30 | ~~1.07~~ | 1.08 |
| 4. Performance | 14 / 4 | = 3.5 | X | .30 | 1.05 | |
| 5. Professional Development | 27.3 / 8 | = 3.41 | X | .10 | .34 | |
| | | | | 1.00 | | |

Point Score ~~3.502~~ 3.51 + productivity

Overall Performance Appraisal Rating

| | | |
|---|---|---|
| 1.0 - 2.5 | Unsatisfactory | 0 |
| 2.6 - 2.9 | Partially meets expectations | 2% |
| 3.0 - 3.5 | Competent | 3% |
| 3.6 - 4.0 | Exceeds expectations | 4% |

Total Increase 3~~.4~~ %

Rev:8/97 c:hr\wpdoc\forms\evalexem.frm

LOGAN HEIGHTS FAMILY HEALTH CENTER
PERFORMANCE REVIEW

DATE May

NAME Evans, Jane Rocio DEPT Mental Health CURRENT RATE $ 1473.34
TITLE Counselor, MFT Intern HIRE DATE 5-30-00 GRADE STEP

(CHECK ONE)

| | | | | | |
|---|---|---|---|---|---|
| | Orientation Review | ✓ | Performance Review | | Promotion |

## WORK CHARACTERISTICS

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Report to work regularly on time? | | | 3.5 | |
| Observe lunch and rest period time limits? | | | 3.5 | |
| Work without lowering the productivity of others? | | | | 4 |
| Willingly accept new methods or ideas? | | | 3.5 | |
| Put forth an extra effort when needed? | | | 3.5 | |
| Seek more work when the current job is completed? | | | 3.5 | |
| Use materials, equipment, and other LHFHC resources wisely? | | | 3.5 | |
| Interact with others in an effective manner? | | | 3 | |
| Display the capability of learning rapidly? | | | 3.5 | |
| Maintain orderly work habits and an orderly work area? | | | | 4 |
| Take on additional responsibility without being urged to do so? | | | | 4 |
| Show enthusiasm and support for company objectives in action? | | | 3.5 | |

Section Average Score: 43 ÷ 12 = 3.58 3.5

Comments: Rocio has diligently completed her work, though appearing that it took a long time it was due to her large caseload + understanding of the new model.

## JOB KNOWLEDGE

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Apply knowledge necessary to achieve expected job results? | | | 3.5 | |
| Have sufficient knowledge to conduct all phases of his/her job? | | | 3.5 | |
| Have sufficient depth and breadth of experience to perform assigned tasks? | | | 3 | |
| Keep up to date in skills and knowledge required? | | | 3.5 | |

Section Average Score: 13.5 ÷ 4 = ~~3.37~~ 3.38 3.38

Comments: Rocio is collecting her hours for licensure + still will learn from every new experience. Working with the Child Psychiatrist will provide another way for her to gain additional job

# LOGAN HEIGHTS FAMILY HEALTH CENTER
## PERFORMANCE REVIEW

DATE May

NAME Evans, Jane Rocio DEPT. Mental Health CURRENT RATE $ 1473.34

TITLE Counselor, MFT Intern HIRE DATE 5-30-00 GRADE STEP

(CHECK ONE)

| | | | | | |
|---|---|---|---|---|---|
| | Orientation Review | ✓ | Performance Review | | Promotion |

### WORK CHARACTERISTICS

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Report to work regularly on time? | | | 3.5 | |
| Observe lunch and rest period time limits? | | | 3.5 | |
| Work without lowering the productivity of others? | | | | 4 |
| Willingly accept new methods or ideas? | | | 3.5 | |
| Put forth an extra effort when needed? | | | 3.5 | |
| Seek more work when the current job is completed? | | | 3.5 | |
| Use materials, equipment, and other LHFHC resources wisely? | | | 3.5 | |
| Interact with others in an effective manner? | | | 3 | |
| Display the capability of learning rapidly? | | | 3.5 | |
| Maintain orderly work habits and an orderly work area? | | | | 4 |
| Take on additional responsibility without being urged to do so? | | | | 4 |
| Show enthusiasm and support for company objectives in action? | | | 3.5 | |

Section Average Score: 43 ÷ 12 = 3.58 3.5

Comments: Rocio has diligently completed her work, & though appearing that it took a long time it was due to her large caseload + understanding of the new model.

### JOB KNOWLEDGE

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Apply knowledge necessary to achieve expected job results? | | | 3.5 | |
| Have sufficient knowledge to conduct all phases of his/her job? | | | 3.5 | |
| Have sufficient depth and breadth of experience to perform assigned tasks? | | | 3 | |
| Keep up to date in skills and knowledge required? | | | 3.5 | |

Section Average Score: 13.5 ÷ 4 = 3.37 3.8 3.38

Comments: Rocio is collecting her hours for licensure - still will learn from every new experience working with the Child Psychiatrist will provide another way for her to gain additional job

PROFESSIONAL DEVELOPMENT FORM
Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Professional presentation | | | 3.2 | |
| Customer Service | | | 3.5 | |
| Assertiveness/action orientation | | | 3.5 | |
| Independent decision making | | | 3.5 | |
| Approach to job duties | | | 3.5 | |
| Ability to deal with others | | | 3 | |
| Dependability | | | 3.5 | |
| Ingenuity/applied creativity | | | 3.5 | |

Section Average Score: 27.3 ÷ 8 = 3.41

Comments: Rocio is very conscientious and has been working hard at getting along with other staff members. She displays integrity and creativity in her work.

Since the last review, employee's most outstanding accomplishments have been:

Rocio has successfully provided group therapy at the school for over six months; she transferred FLC cases to EPSDT; and she presented 3 in-service trainings to all our other staff - two on SAND TRAY therapy and one on women/cultural issues. All were excellent.

Since the last review, this employee has done the following to improve:

Since orientation review Rocio has worked on her colleag[ue] skills. She has attended socials w/ the others outside of work and has managed to deal with a certain amount of scapegoating from other staff members.

This employee's performance and effectiveness can be improved by:

| Area: | Action Step: | Expected Completion Date: |
|---|---|---|
| ① Timely completion of | ① Continue to document | ① All year |
| 2. service plans + | time + be responsible | ~~at~~ |
| 3. paperwork for EPSDT | for completion dates | |
| ④ Adhere at all times | ② No open toed/heeled | ② 5-01-01 |
| 5. to dress codes | shoes | |
| ⑥ Help develop EPSDT services | ③ Participate in | 11-01 |
| 7. for afterhours + crisis at | planning + delivery. | |
| 8. Sherman + Logan schools | | |
| ⑨ Improve relationship | Meet w/ School Psy + | 9-01 |
| 10. w/ school staffs | School Counselor | |

2X month

PERFORMANCE REVIEW
EXEMPT

## RATING WORKSHEET:

| | | | | | | |
|---|---|---|---|---|---|---|
| I. Work Characteristics | 36.5 | / 12 | = 3.04 | X | 0.15 | .46 |
| II. Job Knowledge | 12 | / 4 | = 3 | X | 0.15 | .45 |
| III. Job Duties | 33.5 | / 11 | = 3.05 | X | 0.30 | .91 |
| IV. Performance | 12 | / 4 | = 3 | X | 0.30 | .90 |
| V. Professional Development | 24.5 | / 8 | = 3.06 | X | 0.10 | .31 |
| | | | | | 1.00 | |

Rating 3.03

| | | |
|---|---|---|
| 0.0 - 2.5 | Unsatisfactory (must improve) | **No increase** |
| 2.6 - 2.9 | Partially Meets Expectations (should improve) | **No increase** |
| 3.0 - 3.5 | Competent (satisfactory) | **= 3%** |
| 3.6 - 4.0 | Exceeds Expectations (quite frequently) | **= 4%** |

## EVALUATION CHECKLIST:

| Sup Use | HR Use | Evaluation Checklist | Comments |
|---|---|---|---|
| | ✓ | Review Rating Worksheet Verified | |
| | ✓ | MR Confidentiality Form- signed | |
| | ✓ | Dept. Safety Checklist completed & signed | |
| | ✓ | Training sheet signed<br>Safety Test completed – Passed all sections | |
| | ✓ | Job Description Signed by employee & supervisor | ~~missing~~ " " c/w ~~PD~~ NC [illegible] |
| | ✓ | Age Competencies checked | |
| | ✓ | Physical Completed | |
| | ✓ | PPD completed & read<br>Or TB history questionnaire completed | |

## EMPLOYEE COMMENTS:

In the past year I have given 4 presentations during clinical group supervision meetings, 3 on Sandplay and one on play therapy. Through my active participation at the meetings the other therapists have been able to bill more for services. They have also been able to bill for consultation time on Sandplay therapy with me. I have established an excellent relationship with client & staff at Casa de Milagros. The groups were very well attended.

Jane Rocio Evans 6-5-02
Employee Signature Date

N Walls 5-30-02
Director Date

[signature] 5/29/02
Evaluator Signature Date

[signature] 6/7/02
Director of Human Resources Date

Nora Cole 5/29/02
Department Manager Date

[signature]
President & CEO Date

**JOB DUTIES**

Check only one for each category

| Does this employee: (List job duties below. If additional space is needed, attach a separate sheet) | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| A Community resources | | | 3.5 | |
| B. Assessment + Diagnosis | | | 3.5 | |
| C. Direct counseling | | | 3.5 | |
| D. Participates in design + | | | | 4 |
| implementation of childrens... | | | | |
| E Participates in treatment plans | | | 3.5 | |
| F. Referrals | | | 3.5 | |
| G. Works closely w/other staff | | | 3 | |
| at schools. | | | | |
| H. Maintains records | | | 3.5 | |
| I. Training | | | ~~3~~ | 4 |
| J. Gives commun. presentations | | | | 4 |
| K. Other duties as assigned | | | 3.5 | |
| L. Knowledge of all ages | | | 3.5 | |
| | | | | |

Section Average Score: 43 ÷ 12 = ~~3.58~~ 3.59

Comments: Performs job duties well.

**PERFORMANCE**

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Produce desired results in allotted time? | | | 3.5 | |
| Maintain high quality standards? | | | 3.5 | |
| Accurately follow instructions? | | | 3.5 | |
| Get work done without need for follow up? | | | 3.5 | |

ection Average Score: 3.5

omments: Rocio developed a caseload quickly and had over 20 clients to change to EPSDT, a monumental task with the paperwork.

LOGAN HEIGHTS FAMILY HEALTH CENTER DATE 9/1/?
PERFORMANCE REVIEW

NAME Jane Rocio Evans DEPT. Mental Health CURRENT RATE 35,360.16
TITLE Counselor MFT Intern HIRE DATE 5/30/00 GRADE STEP

(CHECK ONE)

| | | | | | |
|---|---|---|---|---|---|
| V | Orientation Review | | Performance Review | | Promotion |

## WORK CHARACTERISTICS

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Report to work regularly on time? | | | 3 | |
| Observe lunch and rest period time limits? | | | 3 | |
| Work without lowering the productivity of others? | | | 3 | |
| Willingly accept new methods or ideas? | | | 3 | |
| Put forth an extra effort when needed? | | | | 4 |
| Seek more work when the current job is completed? | | | 3 | |
| Use materials, equipment, and other LHFHC resources wisely? | | | 3 | |
| Interact with others in an effective manner? | | | 3 | |
| Display the capability of learning rapidly? | | | 3 | |
| Maintain orderly work habits and an orderly work area? | | | 3 | |
| Take on additional responsibility without being urged to do so? | | | 3 | |
| Show enthusiasm and support for company objectives in action? | | | 3 | |

Section Average Score: 3.08

Comments:

## JOB KNOWLEDGE

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Apply knowledge necessary to achieve expected job results? | | | | 4 |
| Have sufficient knowledge to conduct all phases of his/her job? | | | 3 | ~~4~~ |
| Have sufficient depth and breadth of experience to perform assigned tasks? | | | 3.5 | |
| Keep up to date in skills and knowledge required? | | | 3 | |

Section Average Score: 3.37

Comments:

# LOGAN HEIGHTS FAMILY HEALTH CENTER

## PERFORMANCE REVIEW WORKSHEET
***EXEMPT EMPLOYEES***

Date May 10

Employee Name Jane Rocio Evans

## RATING SCALE:

| | | |
|---|---|---|
| 1 | Unsatisfactory | (must improve) |
| 2 | Partially meets expectations | (should improve) |
| 3 | Competent | (satisfactory) |
| 4 | Exceeds expectations | (quite frequently) |

Note: use whole numbers only for individual performance factors

## PERFORMANCE RATING SUMMARY:

| | | | | | |
|---|---|---|---|---|---|
| 1. Work Characteristics | 43 /12 | = 3.58 | X | .15 | ~~.537~~ .54 |
| 2. Job Knowledge | 13.5/ 4 | = 3.37 | X | .15 | ~~.505~~ .51 |
| 3. Job Duties | 43 / 12 | = 3.58 | X | .30 | ~~1.07~~ 1.08 |
| 4. Performance | 14 / 4 | = 3.5 | X | .30 | 1.05 |
| 5. Professional Development | 27.3 / 8 | = 3.41 | X | .10 | .34 |
| | | | | 1.00 | |

Point Score ~~3.502~~ 3.51 + productivity

## Overall Performance Appraisal Rating

| | | |
|---|---|---|
| 1.0 - 2.5 | Unsatisfactory | 0 |
| 2.6 - 2.9 | Partially meets expectations | 2% |
| 3.0 - 3.5 | Competent | 3% |
| 3.6 - 4.0 | Exceeds expectations | 4% |

Total Increase 3~~4~~ %

LOGAN HEIGHTS FAMILY HEALTH CENTER
PERFORMANCE REVIEW

DATE: May

NAME: Evans, Jane Rocio DEPT: Mental Health CURRENT RATE: $1473.34

TITLE: Counselor, MFT Intern HIRE DATE: 5-30-00 GRADE STEP

(CHECK ONE)

| | | | | | |
|---|---|---|---|---|---|
| | Orientation Review | ✓ | Performance Review | | Promotion |

## WORK CHARACTERISTICS

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Report to work regularly on time? | | | 3.5 | |
| Observe lunch and rest period time limits? | | | 3.5 | |
| Work without lowering the productivity of others? | | | | 4 |
| Willingly accept new methods or ideas? | | | 3.5 | |
| Put forth an extra effort when needed? | | | 3.5 | |
| Seek more work when the current job is completed? | | | 3.5 | |
| Use materials, equipment, and other LHFHC resources wisely? | | | 3.5 | |
| Interact with others in an effective manner? | | | 3 | |
| Display the capability of learning rapidly? | | | 3.5 | |
| Maintain orderly work habits and an orderly work area? | | | | 4 |
| Take on additional responsibility without being urged to do so? | | | | 4 |
| Show enthusiasm and support for company objectives in action? | | | 3.5 | |

Section Average Score: 43 ÷ 12 = 3.58 3.5

Comments: Rocio has diligently completed her work, though appearing that it took a long time it was due to her large caseload + understanding of the new model.

## JOB KNOWLEDGE

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Apply knowledge necessary to achieve expected job results? | | | 3.5 | |
| Have sufficient knowledge to conduct all phases of his/her job? | | | 3.5 | |
| Have sufficient depth and breadth of experience to perform assigned tasks? | | | 3 | |
| Keep up to date in skills and knowledge required? | | | 3.5 | |

Section Average Score: 13.5 ÷ 4 = ~~3.37~~ ~~3.8~~ 3.38

Comments: Rocio is collecting her hours for licensure + still will learn from every new experience. Working with the Child Psychiatrist will provide another way for her to gain additional job

LOGAN HEIGHTS FAMILY HEALTH CENTER
PERFORMANCE REVIEW

DATE May

NAME Evans, Jane Rocio  DEPT. Mental Health  CURRENT RATE $1473.34

TITLE Counselor, MFT Intern  HIRE DATE 5-30-00  GRADE  STEP

(CHECK ONE)

| | | | | | |
|---|---|---|---|---|---|
| | Orientation Review | ✓ | Performance Review | | Promotion |

WORK CHARACTERISTICS
Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Report to work regularly on time? | | | 3.5 | |
| Observe lunch and rest period time limits? | | | 3.5 | |
| Work without lowering the productivity of others? | | | | 4 |
| Willingly accept new methods or ideas? | | | 3.5 | |
| Put forth an extra effort when needed? | | | 3.5 | |
| Seek more work when the current job is completed? | | | 3.5 | |
| Use materials, equipment, and other LHFHC resources wisely? | | | 3.5 | |
| Interact with others in an effective manner? | | | 3 | |
| Display the capability of learning rapidly? | | | 3.5 | |
| Maintain orderly work habits and an orderly work area? | | | | 4 |
| Take on additional responsibility without being urged to do so? | | | | 4 |
| Show enthusiasm and support for company objectives in action? | | | 3.5 | |

Section Average Score: 43 ÷ 12 = ~~3.58~~ 3.5

Comments: Rocio has diligently completed her work, & though appearing that it took a long time it was due to her large caseload + understanding of the new model.

JOB KNOWLEDGE
Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Apply knowledge necessary to achieve expected job results? | | | 3.5 | |
| Have sufficient knowledge to conduct all phases of his/her job? | | | 3.5 | |
| Have sufficient depth and breadth of experience to perform assigned tasks? | | | 3 | |
| Keep up to date in skills and knowledge required? | | | 3.5 | |

Section Average Score: 13.5 ÷ 4 = ~~3.37~~ ~~3.8~~ 3.38

Comments: Rocio is collecting her hours for licensure + still will learn from every new experience working with the Child Psychiatrist will provide another way for her to gain additional job

**PROFESSIONAL DEVELOPMENT**

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Professional presentation | | | 3.2 | |
| Customer Service | | | 3.5 | |
| Assertiveness/action orientation | | | 3.5 | |
| Independent decision making | | | 3.5 | |
| Approach to job duties | | | 3.5 | |
| Ability to deal with others | | | 3 | |
| Dependability | | | 3.5 | |
| Ingenuity/applied creativity | | | 3.5 | |

Section Average Score: 27.3 ÷ 8 = 3.41

Comments: Rocio is very conscientious and has been working hard ~~at~~ getting along with other staff members. She displays integrity and creativity in her work.

Since the last review, employee's most outstanding accomplishments have been:

Rocio has successfully provided group therapy at the school for over six months; she transferred FCC cases to EPSDT; and she presented 3 in-service trainings to all our other staff - two on SAND TRAY THERAPY and one on women/cultural issues. All were excellent.

Since the last review, this employee has done the following to improve:

Since orientation review Rocio has worked on her colleague skills. She has attended socials w/ the others outside of work and has managed to deal with a certain amount of scapegoating from other staff members.

This employee's performance and effectiveness can be improved by:

| Area: | Action Step: | Expected Completion Date: |
|---|---|---|
| ① Timely completion of | ① Continue to document | ① All year |
| 2. service plans + | time + be responsible | ~~at~~ |
| 3. paperwork for EPSDT | for completion dates | |
| ④ Adhere at all times | ② No open toed/heeled | ② 5-01-01 |
| 5. to dress codes | shoes | |
| ⑥ Help develop EPSDT services | ③ Participate in | 11-01 |
| 7. for afterhours + crisis at | planning + delivery. | |
| 8. Sherman + Logan schools | | |
| ⑨ Improve relationship | Meet w/ School Psy + | 9-01 |
| 10. w/ school staffs | School Counselor | |

2X month

# PERFORMANCE REVIEW
## EXEMPT

**RATING WORKSHEET:**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| I. Work Characteristics | 36.5 | / 12 | = 3.04 | X | 0.15 | .46 |
| II. Job Knowledge | 12 | / 4 | = 3 | X | 0.15 | .45 |
| III. Job Duties | 33.5 | / 11 | = 3.05 | X | 0.30 | .91 |
| IV. Performance | 12 | / 4 | = 3 | X | 0.30 | .90 |
| V. Professional Development | 24.5 | / 8 | = 3.06 | X | 0.10 | .31 |
| | | | | | 1.00 | |

Rating 3.03

| | | |
|---|---|---|
| 0.0 - 2.5 | Unsatisfactory (must improve) | No increase |
| 2.6 - 2.9 | Partially Meets Expectations (should improve) | No increase |
| 3.0 - 3.5 | Competent (satisfactory) | = 3% |
| 3.6 - 4.0 | Exceeds Expectations (quite frequently) | = 4% |

**EVALUATION CHECKLIST:**

| Sup Use | HR Use | Evaluation Checklist | Comments |
|---|---|---|---|
| | ✓ | Review Rating Worksheet Verified | |
| | ✓ | MR Confidentiality Form- signed | |
| | ✓ | Dept. Safety Checklist completed & signed | |
| | ✓ | Training sheet signed<br>Safety Test completed – Passed all sections | |
| | ✓ | Job Description Signed by employee & supervisor | ~~Missing~~ ~~JD~~ [illegible] |
| | ✓ | Age Competencies checked | NC |
| | ✓ | Physical Completed | |
| | ✓ | PPD completed & read<br>Or TB history questionnaire completed | |

**EMPLOYEE COMMENTS:**

In the past year I have given 4 presentations during clinical group supervision meetings, 3 on Sandplay and one on play therapy. Through my active participation at the meetings the other therapists have been able to bill more for services. They have also been able to bill for consultation time on Sandplay therapy with me. I have established an excellent relationship with client & staff at Casa de Milagros. The group were very well attended.

Jane Rocio Evans 6-5-02
Employee Signature Date

[signature] 5-30-02
Director Date

Jeanie Settle 5/29/02
Evaluator Signature Date

[signature] 6/7/02
Director of Human Resources Date

Nora Cole 5/29/02
Department Manager Date

[signature]
President & CEO Date

**JOB DUTIES**

Check only one for each category

| Does this employee: (List job duties below. If additional space is needed, attach a separate sheet) | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| A Community resources | | | 3.5 | |
| B. Assessment + Diagnosis | | | 3.5 | |
| C. Direct counseling | | | 3.5 | |
| D. Participates in design + | | | | 4 |
| implementation of childrens' | | | | |
| E Participates in treatment plans | | | 3.5 | |
| F. Referrals | | | 3.5 | |
| G. Works closely w/other staff | | | 3 | |
| at schools. | | | | |
| H. Maintains records | | | 3.5 | |
| I. Training | | | 3 | 4 |
| J. Gives commun. presentations | | | | 4 |
| K. Other duties as assigned | | | 3.5 | |
| L. Knowledge of all ages | | | 3.5 | |
| | | | | |

Section Average Score: ~~43 ÷ 12 = 3.58~~ 3.59

Comments: Performs job duties well.

**PERFORMANCE**

Check only one for each category

| Does this employee? | Unsatisfactory (1) | Performs Below Expectations (2) | Meets Expectations (3) | Exceeds Expectations (4) |
|---|---|---|---|---|
| Produce desired results in allotted time? | | | 3.5 | |
| Maintain high quality standards? | | | 3.5 | |
| Accurately follow instructions?. | | | 3.5 | |
| Get work done without need for follow up? | | | 3.5 | |

Section Average Score: 3.5

Comments: Rocio developed a caseload quickly and had over 20 clients to change to EPSDT, a monumental task with the paperwork.